Terry LEWIS (No. 82–747)

and

Jerry Lewis (No. 82–777), Appellants,

v.

UNITED STATES, Appellee.

Nos. 82–747, 82–777.

District of Columbia Court of Appeals.

Argued May 3, 1983.

Decided Sept. 15, 1983.

Webster T. Knight, Washington, D.C., appointed by this court, for appellant Terry Lewis.

Scott Howe, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., was on the brief, for appellant Jerry Lewis.

Robert B. Lyon, Jr., Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell and James F. Rutherford, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN and BELSON, Associate Judges, and GALLAGHER, Associate Judge, Retired.

BELSON, Associate Judge:

Appellant Terry Lewis seeks review of a judgment of conviction for simple assault in violation of D.C.Code § 22–504 (1981) as a lesser-included offense of assault with a dangerous weapon. Co-appellant Jerry Lewis seeks review of a judgment of conviction for assault with a dangerous weapon in violation of D.C.Code § 22–502 (1981). Both appellants had been charged with assault with a dangerous weapon. A jury instruction as to simple assault as a lesser-

included offense was given as to Terry Lewis, but not Jerry Lewis. After a period of deliberation, the jury sent the court an unsigned note indicating that Terry Lewis was "not guilty," and that Jerry Lewis was "guilty of simple assault." After consulting with counsel the court directed the jury to resume its deliberations and supplied it with a verdict form. Appellants contend the trial court erroneously refused to take a unanimous verdict of the jury. Appellant Jerry Lewis further contends that the court, in effect, directed or coerced a verdict of guilty against him of assault with a dangerous weapon by providing the jury with verdict forms which did not include as to him the lesser-included offense of which the jury had originally indicated his guilt. We disagree with appellants' contentions and, accordingly, affirm.

I

Appellants Jerry Lewis and his twin brother, Terry, were arrested on August 6, 1981 on charges resulting from their involvement in a fight with the complainant, William Proctor. At trial, Proctor testified that he had seen Jerry Lewis pointing his finger at and arguing with a woman, later identified as Ivy Carpenter, while Proctor was walking to a friend's house near the intersection of 14th Street and New York Avenue, N.W. shortly after midnight. Although Proctor was not personally acquainted with either Jerry Lewis or Ivy Carpenter, he confronted Jerry Lewis and told him to "stop doing that." A brief shoving match ensued between Proctor and Jerry Lewis. Following their brief encounter, Proctor and Jerry Lewis, who was still accompanied by Ivy Carpenter, walked away in different directions.

Proctor testified that a few minutes later Jerry Lewis and his twin brother, Terry,[1] ran up to him and attacked him with what

appeared to him to be baseball bats. After being hit a few times on various parts of his body, Proctor fell. After appellants withdrew, Proctor flagged down a passing police car and recounted his story to its two occupants, Officers Cuff and McBride. Shortly thereafter, while appellants were standing in front of a bar known as "The Room," Proctor identified them as his assailants and the two officers arrested them.

In defense, Jerry Lewis testified that he and Terry Lewis, both unarmed, simply wished to discuss the initial confrontation with Proctor. As they approached him, Proctor tried to hit and kick the brothers. Jerry Lewis admitted that he picked up a stick in self-defense and struck Proctor in the knee, after which Proctor fled. Jerry Lewis also testified that his brother had neither carried nor used against Proctor any stick or weapon.[2] Terry Lewis did not testify.

Before sending the case to the jury, the court gave a lesser-included offense instruction for simple assault for Terry Lewis which had been requested by his counsel prior to closing arguments. The court advised the jury that the lesser-included offense instruction "would only apply in the case of Terry Lewis."

The court gave the following instruction concerning the jury's procedure for communicating with the court during its deliberations:

If it should become necessary while you are in deliberations for you to communicate with me about anything, there is only one way that you can do that and that is by putting whatever your question is into a note and putting it in writing and having it signed either by your foreperson or another member of the jury. It has to be signed by one of you or I cannot accept it.

---

1. Although Proctor made in-court identifications of the brothers as his assailants, he was unable to distinguish which one of the brothers he had seen with Ivy Carpenter and later engaged in the initial confrontation.

2. Government witness Ivy Carpenter's testimony also corroborated Jerry Lewis' admission that he had been in possession of a stick. She did not testify that Terry Lewis was also carrying a stick or other weapon.

If I am going to answer such a communication I will most likely do it here in open court verbally with everybody present. The only other possible way that I might answer a note of yours would be with a note of mine and under those circumstances I would sign it.

The court further instructed the jury that it was to consider each instruction to apply to each defendant separately and that the verdicts must be unanimous for each defendant respectively. Although the court denied a request by counsel for Terry Lewis for verdict forms, it reiterated the charges against each defendant, cautioning the jury to consider the lesser-included offense of simple assault "only with respect to Terry Lewis." The jury then retired for deliberations.

Approximately an hour and a half later, the jury sent the court the following note, which was not signed:

Jerry Lewis, guilty of simple assault. Terry Lewis, not guilty.

The court acknowledged receipt of the note and dismissed the jury for the remainder of the day.

On the next day, the court rejected the requests by respective counsel for defendants that the court take the apparent verdicts and enter judgments of acquittal. The court reasoned in the following manner:

Let me tell you what is bothering me. Let's start at the beginning. As we all know during the course of this trial there has been some confusion from time to time as to who was who among the defendants. Indeed, the complainant and police officers who arrested them cannot tell these two identical twins apart. Their names to complicate the matter further are Jerry and Terry Lewis and we have a note, as you know, that says we find Jerry Lewis, [guilty of] simple assault, Terry Lewis, not guilty. As pointed out there was no simple assault charge before the jury on Jerry Lewis, although there was on Terry Lewis.

The court added that it was impossible to discern from the jury's note whether the verdict was unanimous. The court concluded that, in any event, it could not accept the communication because it was unsigned and therefore violative of the court's instruction to the jury regarding the necessity for signed communications.

In order to remedy the confusion, the court asked both counsel for appellants whether the court should declare a mistrial *sua sponte*. Both counsel, respectively, rejected this proposal, responding that although the note was improper, the jury's deliberations had not been sufficiently "polluted" or "poisoned" by it to warrant a mistrial. The court proposed the following alternative:

I think for me to understand what they are doing, I should give them a verdict form and tell them I got their note yesterday. I don't consider it a communication and therefore I really have not paid attention to it because as I informed them, I cannot accept a communication if it is not signed. I don't know where you stand in your deliberations or whether you have reached a unanimous verdict or verdicts. If you have, why not communicate that fact to me now by a proper note and we will take the verdicts, whatever they are.

Although both counsel for appellants still urged that the court take the "apparent" verdicts contained in the jury's note, they did not object to this proposal.

The court ordered that the jury be called back and addressed it in the following manner:

Good morning, ladies and gentlemen. Yesterday, you sent me a note. I could not accept it because it was not signed by anybody. Remember I cannot accept a communication unless it is signed and therefore it is no kind of communication at all. I cannot pay any attention to it and I didn't; so let me tell you this, I am going to ask you to go back to your jury room and if and when you have a unanimous verdict, simply send me a note saying, "We have reached unanimous ver-

dicts." That is all you have to put in the note and have it signed by the foreperson.

Now, just to remind you of the questions you are considering, I am giving you some verdict forms that you can take back with you. All right, thank you. Would you resume your deliberations.

The jury resumed its deliberations in possession of a jury verdict form that corresponded to the jury instructions. There was no objection to the use of the jury verdict form.[3] Almost an hour and a quarter later, the jury sent the court a note stating that a unanimous verdict had been reached. The jury found Jerry Lewis guilty of assault with a dangerous weapon and Terry Lewis guilty of simple assault. Each juror was then individually polled with respect to Jerry and Terry Lewis, respectively.

## II

Appellants contend that the court deprived them of unanimous jury verdicts favorable to them. Moreover, appellant Jerry Lewis contends that the court coerced the finding of guilt of the offense of assault with a dangerous weapon and violated the jury's right to return a verdict "in the teeth of both the law and facts." *See, e.g., United States v. Dougherty,* 154 U.S.App.D.C. 76, 93–98, 473 F.2d 1113, 1130–34 (1972). Appellant Terry Lewis contends that, although only an "apparent" verdict, the jury's note reflected its "manifest intent" to acquit him and that once the "apparent" verdict was presented to the court, the court lacked authority to require the jury to continue its deliberations. We cannot agree with appellants' positions.[4]

A verdict is not final until the jury's deliberations are over, the result is announced in open court, and no dissent by

a juror is registered. *See United States v. Love,* 597 F.2d 81, 84–85 (6th Cir.1979); *United States v. Taylor,* 507 F.2d 166, 168 (5th Cir.1975). *See generally* 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE, CRIMINAL § 517 at 32 (2d ed. 1982). The test for the validity of a verdict is whether it is certain, unqualified and unambiguous in light of, among other things, the circumstances surrounding its receipt. *See United States v. Morris,* 612 F.2d 483, 490 (10th Cir.1979); *Cook v. United States,* 379 F.2d 966, 970 (5th Cir.1967); *see also United States v. McCoy,* 139 U.S.App.D.C. 60, 63, 429 F.2d 739, 743 (1970) (per curiam). Uncertainty or contingency as to the finality of the jury's determination, in legal effect, is equivalent to no verdict. *Sincox v. United States,* 571 F.2d 876, 878 (5th Cir.1978); *Cook, supra,* 379 F.2d at 970. It is within the sound discretion of the trial court to direct a jury to continue deliberations after returning a verdict which the court deems to be unintelligible, *see Wilder v. United States,* 246 F.2d 186, 189–90 (5th Cir.1957), the result of a jury's inadvertent mistake, *see United States v. Henson,* 365 F.2d 282 (6th Cir.), *cert. denied,* 385 U.S. 974, 87 S.Ct. 513, 17 L.Ed.2d 437 (1966); *Helms v. United States,* 310 F.2d 236 (5th Cir.1962) (per curiam), improper in form or arguably unclear, *see United States v. Howard,* 507 F.2d 559 (8th Cir.1974), the result of a jury's misinterpretation of the court's instruction on the number and nature of the offenses before it, *see United States v. Wolford,* 144 U.S.App.D.C. 1, 444 F.2d 876 (1971); *United States v. Walker,* 456 F.2d 1037 (5th Cir. 1972) (per curiam), or not responsive to the issues. *See State v. Dougherty,* 38 Conn. Sup. 400, 403–06, 450 A.2d 870, 872–73 (1982); *see also Heinze v. State,* 184 Md. 613, 42 A.2d 128 (1945). Based upon our review of the record, we are satisfied that

---

**3.** Counsel for Jerry Lewis objected to the listing of the alternative of "guilty" before that of "not guilty." The trial court had explained to the jury on several occasions that the listing or statement of the alternative was in alphabetical order. We see no merit in the objection.

**4.** The parties do not dispute that the jury's note failed to comply with the return of verdict procedures elaborated in Super.Ct.Crim.R. 31, and that the jury's note does not raise double jeopardy questions. *See, e.g., United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

the court properly exercised its discretion in determining that the jury should be told to continue its deliberations because the jury's unsigned note demonstrated its confusion about the charges against or identity of each appellant, there was no indication that the result suggested by the note was unanimous, and the note was, under the circumstances, not a verdict.

Prior to the jury's deliberations, the court had provided it on two occasions with specific instructions to consider the lesser-included offense of assault only with respect to Terry Lewis, not Jerry Lewis. Those instructions were appropriate in light of the evidence. The second lesser-included offense instruction was given immediately before the jury retired for deliberations. When, contrary to these instructions, the jury's note reflected that it had considered the lesser-included offense with respect to Jerry Lewis, the court had sufficient grounds to believe that the jury was confused about the charges or, as counsel for Jerry Lewis suggested, had transposed the names of the appellants.

In addition, there is support in the record for the court's belief that the jury's note reflected its confusion about the respective identities of the appellants in light of their remarkably similar physical appearance and names. As the court noted, complainant Proctor had been unable to pick out in court which one of the appellants he had initially encountered with Ivy Carpenter. Arresting Officer Cuff was unable to describe what each appellant, respectively by name, was wearing at the time of the arrest because "[t]hey are twins." Counsel for each appellant also attempted to exploit this physical similarity of appellants in their motions for acquittal at the close of the government's case-in-chief, noting Proctor's failure to make separate physical identifications of each appellant. In denying the motion, the

court noted, with both defense counsel in agreement, that appellants are "remarkably identical gentlemen." We are satisfied on this record that the court was legitimately concerned that the jury's note may have reflected its confusion about the respective identities of appellants.

We observe also that appellants failed to avail themselves of other relief at trial. Prior to instructing the jury to continue its deliberations, the court proposed to appellants' counsel the alternate remedy of a mistrial. However, counsel for each appellant rejected that proposal, on the ground that the jury's note had not "poisoned" or "polluted" the jury's deliberations sufficiently to warrant a mistrial. In addition, neither counsel requested any other relief, such as a jury poll, nor did they object to the court's ultimate instruction to the jury.

The court's further instruction focused strictly on the form of the note, explaining that it was "no communication at all" because it was unsigned. The instruction's language was neutral, did not suggest in any way that the court had considered the merits of the note, and was reasonably based upon the court's prior instruction to the jury that all jury communications to the court about "anything" arising during deliberations be in writing and signed by the foreperson or another juror.

■ Finally, contrary to appellant Jerry Lewis' contention, the court's provision to the jury of verdict forms did not direct a verdict of guilty against him. The forms reflected the actual charges against each appellant, which had previously been recited to the jury in the court's instructions. The forms also offered the jury the same opportunity to acquit the defendant that the jury had had at the time it sent its note to the court.[5]

---

5. The cases chiefly relied upon by appellants are inapposite. In *White v. State,* 492 S.W.2d 281, 282–83 (Tex.Cr.App.1973), the jury, unlike here, had returned to the courtroom and had announced that it had reached a verdict. The word "guilty" was written on part of the charg-

ing papers which had been in the jury's possession, but the formal verdict form indicating "not guilty" had been signed by the jury foreman. The court refused to accept the verdict and ordered the jury to continue deliberations. The jury later returned a "guilty" verdict which

In view of the foregoing, we hold that the trial court did not abuse its discretion in determining that it should not accept the jury's note as a verdict and in directing the jury as it did to continue its deliberations. Accordingly, the judgments of convictions are

*Affirmed.*

the court accepted. Unlike here, the court in *White* immediately ordered the jury to return to its deliberations upon receiving the verdict, failed to bring to the attention of the parties that the verdict had not been reduced to proper form, did not offer any explanation to the jury as to its actions, and acted over strenuous defense objections. *Id.* The appellate court reversed the trial court's judgment for failure to comply with appropriate statutory procedures for receiving a verdict and polling a jury upon receipt of a verdict. *Id.* at 283.

In *Maltbie v. State,* 139 Ga.App. 342, 228 S.E.2d 368 (1976), the jury unlike here, had returned to the courtroom and tendered its verdict to the court. The jury had found defendant guilty of cruelty to children "without intent." For unspecified reasons the court found the verdict unacceptable and instructed the jury to return a verdict of guilty or not guilty. The jury subsequently returned the same verdict of "guilty" with the jury foreman reiterating that it was "without intent." The court accepted the guilty verdict. On appeal, the trial court was reversed on the grounds that intent was an element of the offense of cruelty to children without which there could be no determination of guilt and that the jury's "without intent" finding amounted to an acquittal. Here, the jury had not returned to the courtroom, the court could not be sure that the jury's note reflected unanimity, and the jury's unsigned note did not accurately reflect the charges against each appellant, thereby demonstrating jury confusion.