The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Edgar Lee DURRE,
Defendant-Appellant.

No. 82SA176.

Supreme Court of Colorado,
En Banc.

May 21, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, James England, Thomas M. Van Cleave, III, Deputy State Public Defenders, Denver, for defendant-appellant.

QUINN, Justice.

In this phase of a bifurcated appeal, we consider the single issue of whether special jury verdicts on aggravation and mitigation, which were returned at a sentencing hearing conducted pursuant to section 16–11–103, 8 C.R.S. (1973 & Supp.1983), after the jury had found the defendant guilty of first degree murder, satisfied the statutory requirement of unanimity so as to validate the sentence of death thereafter imposed by the trial court.[1] We conclude that the verdicts were impermissibly uncertain and thus failed to satisfy the unanimity requirement essential for any verdict directly resulting in a sentence of death. We accordingly reverse the district court's imposition of the death sentence and order a limited remand of the case to the district court for the entry of a sentence of life imprisonment, with directions to immediately return the case to this court for resolution of other issues relating to the guilt phase of the trial.

## I.

In December 1980, the People charged the defendant-appellant, Edgar Lee Durre, by information with first degree murder,[2]

---

1. We granted the defendant's motion to bifurcate the appellate proceedings so that issues relating to the death sentence would be determined prior to our resolution of those issues pertaining to the guilt phase of the trial.

Section 16–11–103(7), 8 C.R.S. (Supp.1983), states:

"(a) Whenever a sentence of death is imposed upon a person pursuant to the provisions of this section, the supreme court shall review the propriety of that sentence, having regard to the nature of the offense, the character and record of the offender, the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based. The procedure to be employed in the review shall be as provided by supreme court rule.

"(b) A sentence of death shall not be imposed pursuant to this section if the supreme court determines that the sentence was imposed under the influence of passion or prejudice or any other arbitrary factor or that the evidence presented does not support the finding of statutory aggravating circumstances." *See also* C.A.R. 4(e).

2. The People charged Durre with both murder after deliberation, § 18–3–102(1)(a), 8 C.R.S. (1973), and felony murder, § 18–3–102(1)(b), 8 C.R.S. (1973). At the conclusion of the evidence

first degree kidnapping,[3] and aggravated robbery.[4] The defendant pled not guilty to the charges and was tried during August and September 1981 in the Weld County District Court. During an extensive voir dire the twelve jurors and two alternates eventually selected to hear the case all confirmed that, if they found the defendant guilty of first degree murder, they had no conscientious scruples about capital punishment that might interfere with their ability to follow the court's instructions in determining whether the factual predicates necessitating imposition of the death penalty had been established.[5] At the guilt phase of the trial the People presented evidence showing that on November 29, 1980, Durre and two other men, James Manners and Richard Baldwin,[6] kidnapped and robbed Gary L. Statler at a Denver motel, confined him for several days in an Aurora house where they forced him to write checks to a friend of the defendant, and then took him to a rural part of Weld County where they stabbed him to death. On September 23, 1981, the jury returned a verdict finding Durre guilty of first degree murder (felony murder).[7]

Because the jury had returned a guilty verdict on the charge of first degree murder, a class 1 felony, the trial court conducted a sentencing hearing pursuant to section 16–11–103, 8 C.R.S. (1973 & Supp. 1983). This provision requires the same jury which rendered the guilty verdict on a class 1 felony to return verdicts on the existence or nonexistence of several mitigating, additional mitigating, and aggravating factors relating to the defendant and the circumstances surrounding the crime. Under the provisions of section 16–11–103(4), the trial court is required to sentence the defendant to life imprisonment if the jury returns a verdict finding the existence of one or more mitigating or additional mitigating factors or the absence of any aggravating factors, or if the jury cannot unanimously agree on any verdict. In contrast, if the jury returns verdicts finding the nonexistence of any mitigating or additional mitigating factors and the existence of at least one aggravating factor, the statute requires the trial court to sentence the defendant to death.

At the outset of the sentencing hearing the court orally advised the jurors that at the conclusion of the evidence they would decide upon the existence of certain mitigating and aggravating factors and their decision on these factors "will determine what penalty shall be imposed." Both sides then made brief evidentiary presentations to the jury at the sentencing hearing. The parties first stipulated that the People had made a prior plea and sentence offer involving a guilty plea to first degree murder with a life sentence and a guilty plea to aggravated robbery with the sentence to be determined by the court and that Durre refused the offer. The People rested on the evidence presented at the guilt phase of the trial. A professor of theology then

the trial court required the People to elect between these two counts of first degree murder. The People elected to proceed on the felony murder charge. *Cf. People v. Bowman,* 669 P.2d 1369 (Colo.1983) (the trial court, under the rule announced in *People v. Lowe,* 660 P.2d 1261 (Colo.1983), should not require the prosecution to elect between alternative theories of first degree murder).

3. § 18–3–301, 8 C.R.S. (1973).

4. § 18–4–302, 8 C.R.S. (1973).

5. *See generally, e.g., Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *cf. People v. District Court,* 190 Colo. 342, 546 P.2d 1268 (1976) (approval of *ante-voir dire* instruction relating to capital sentencing hearing).

6. James Manners was also charged by the People in connection with these events. The Weld County District Court tried both Durre and Manners on the issue of guilt in a consolidated proceeding. Richard Baldwin pled guilty to second degree murder prior to the trial of Durre and Manners.

7. Guilty verdicts were also returned on first degree kidnapping, aggravated robbery, and theft. The kidnapping and robbery convictions were later vacated after the death penalty was imposed. *See People v. Bartowsheski,* 661 P.2d 235 (Colo.1983). The theft offense, which was submitted to the jury at the defendant's request as a lesser nonincluded offense of aggravated robbery, resulted in a sentence of three years.

testified on behalf of the defendant and offered his opinion that, based on his meeting and discussions with the defendant, a death sentence was inappropriate in this case. The People called the district attorney in rebuttal to testify to the motives underlying the plea bargain offer.

At the conclusion of the evidence the court instructed the jury and outlined in Instruction No. 1 the jury's statutory duty as follows:

"You have found the Defendant, Edgar Lee Durre, guilty of Murder in the First Degree. It is now your duty to make a finding of Mitigating or Aggravating Circumstances, as will be set forth below. In arriving at this determination, you should consider all of the evidence presented during the trial as well as all of the evidence presented during defendant Durre's sentencing hearing before you. You must keep in mind that the burden is upon the prosecution to disprove, beyond a reasonable doubt, the existence of mitigating circumstances.[8] Further, the burden is upon the prosecution to prove beyond a reasonable doubt, the existence of aggravating circumstances.

"I. *Mitigating Circumstances.*

"If you find any of the following mitigating circumstances, as listed below, you need not proceed further:

"(a). [t]he defendant was under the age of 18 years, or

"(b). his capacity to appreciate wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution, or

"(c). he was under unusual and substantial duress, although not such duress as to constitute a defense to prosecution, or

"(d). he was a principal in the offense which was committed by another, but his participation was relatively minor, although not so minor as to constitute a defense to prosecution, or

"(e). he could not have reasonably foreseen that his conduct in the course of the commission of the offense for which he was convicted would cause, or would create a grave risk of causing, death to another person.

"If you are satisfied beyond a reasonable doubt that none of the above mitigating factors exist, then you must consider whether any other mitigating factors exist and whether they are sufficient to justify Life Imprisonment. Such factors include but are not limited to:

"II. *Additional Mitigating Circumstances*

"(a). The emotional state of the Defendant at the time the crime was committed;

"(b). Any other evidence which bears on the question of mitigation.

---

**8.** Section 16–11–103 is silent with respect to the burden of proof on mitigating and additional mitigating circumstances. During the settlement of instructions the trial court expressed the belief that there were "two different standards of proof" applicable respectively to the statutory mitigating factors of subsection (5) and the additional mitigating factors of subsection (5.1). The court also was of the opinion that Instruction No. 1, to which the defendant objected, correctly informed the jury of these two standards. What precisely the court meant by "two different standards of proof" is unclear, and we find nothing in Instruction No. 1 explicating the court's statement.

Because we resolve this case on other grounds, we express no opinion on the correctness of that part of the trial court's instruction which required "the prosecution to disprove, beyond a reasonable doubt, the existence of mitigating circumstances" and, in addition, failed to set forth any burden of proof with respect to additional mitigating circumstances. We do note that the United States Supreme Court has recognized that "the Constitution does not require a State to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances ...." *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 2750, 77 L.Ed.2d 235 (1983). However, as the Court has emphasized, "[i]t is elementary that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires." *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 3459–60, 77 L.Ed.2d 1171 (1983).

"If you do not find that there are additional mitigating factors that justify life imprisonment, then you must determine whether any of the following aggravating factors [exist] beyond a reasonable doubt. These factors are:

"III. *Aggravating Circumstances.*

(a). The Defendant intentionally killed a person kidnapped or being held hostage by him or anyone associated with him; or,

(b). The Defendant was a party to an agreement in furtherance of which Gary L. Statler was intentionally killed; or,

(c). The Defendant committed First Degree Kidnapping or Aggravated Robbery and in the course or furtherance of, or immediate flight therefrom[,] he intentionally caused the death of a person other than one of the participants. A person intentionally causes the death of another when his conscious objective is to cause the death of that person.

(d). The Defendant committed the offense in an especially heinous, cruel, or depraved manner.

"Your verdict as to the foregoing factors must be unanimous." [9]

Three verdict forms were submitted to the jury. Verdict Form No. I listed the five "statutory" mitigating circumstances set out in Instruction No. 1 and directed the jury foreman to place an "X" in front of any mitigating circumstance found to exist or any mitigating circumstance the nonexistence of which the prosecution had failed to prove beyond a reasonable doubt, and then to sign the verdict. Verdict Form No. I further directed the jury to proceed to consider Verdict Form No. II only if the finding on Verdict Form No. I was that none of the statutory mitigating circumstances were present. Verdict Form No. II began as follows:

"We, the jury, having considered all the evidence, now find the following additional mitigating circumstances to exist in sufficient degree to justify a sentence of life imprisonment:

( )* A. The emotional state of the defendant at the time the crime was committed.

( )* B. Any other evidence which bears on the question of mitigation.

"In the event your finding is based upon one of the above mitigating circumstances, your Foreman shall place an 'X' in the appropriate box. If only box B is checked, your Foreman shall set forth, in writing, the mitigating circumstance or circumstances which the jury regarded as sufficient to justify a sentence of life imprisonment rather than death."

Verdict Form No. II then provided a space for the jury to list any additional mitigating factors and informed the jury that if they found "an additional mitigating circumstance or circumstances sufficient to justify a life sentence," the jury need not proceed further; if, however, the jury did "not find additional mitigating circumstances sufficient to justify a life sentence rather than death to be present," the verdict directed the jury foreman to sign that part of Verdict Form No. II so indicating and told the jury to then proceed to the third verdict. Verdict Form No. III listed the four aggravating circumstances contained in the court's instruction and directed the jury foreman to place an "X" in front of any aggravating circumstance found to exist and to sign that verdict; in the event no aggravating circumstances were found to be present, the foreman was directed to sign that part of Verdict Form No. III so indicating.

The jury, after several hours of deliberation, informed the court that it had reached a verdict. Upon entering the court room, the jury tendered to the court the three verdict forms and a separate note, all of which were signed by the foreman. The jury found, in Verdict No. I, "none of the ... statutory mitigating circumstances to

---

**9.** Two other instructions were given by the court. One of them told the jury that the manner of inflicting the punishment of death was by lethal gas and outlined the statutory procedures for execution of the death sentence, §§ 16–11–401 to 16–11–405, 8 C.R.S. (1973 & Supp.1983). The other instruction defined the phrase "causing the death of another person."

be present." Verdict No. II stated: "We, the jury, do not find additional mitigating circumstances sufficient to justify a life sentence rather than death to be present." In Verdict No. III the jury found three aggravating circumstances to be present: (1) that Durre "ha[d] been a party to an agreement in furtherance of which a person had been intentionally killed;" (2) that Durre "committed First Degree Kidnapping or Aggravated Robbery and in the course or furtherance of or immediate flight therefrom, he intentionally caused the death of Gary L. Statler;" and (3) that Durre "committed the offense in an especially heinous, cruel or depraved manner."

The separate note, entitled "Deliberating the Sentence," was specifically addressed to the trial judge. Written in longhand, the note stated in pertinent part as follows:

"On behalf of the jurors: We the jurors, in good conscience and in light of the evidence presented, can neither claim any mitigating circumstances nor deny the aggravating circumstances unchecked or checked, respectively, in accordance with the instructions of the Court, and as evidenced on the three verdict forms.

"However, because of personal feelings, in the minds of several jurors, we wish the court to know that unanimity does not exist regarding the invoking of the death penalty for Edgar Le[e] Durre."

The note continued with the statement that "the following jurors are in agreement with the death sentence if the Court so chooses," followed by the signature of seven jurors. Below the signatures of these seven, the note stated that "[t]he following jurors respectfully ask for life imprisonment only," followed by the signature of five jurors. The signature of the foreman appeared at the bottom on the note.

The court polled the jury by reading the three verdict forms aloud and inquiring of each juror whether these were their respective verdicts. The jurors responded affirmatively to this inquiry. The court next queried each of the jurors as to the handwritten note attached to the verdict forms. The seven jurors who had stated in the note that they "agreed with the death sentence if the Court so chooses" were asked whether the note set forth their "feeling" or "statement" regarding the death sentence. These seven jurors responded affirmatively to the court's question. The five jurors who had stated in the note that they "respectfully ask for life imprisonment only" were asked whether this was their "verdict," to which each responded affirmatively.[10] The court accepted the verdict, excused the jury, and stated that, in its opinion, the jurors "followed the law as they understood it to be, despite the conscientious difficulties at least five of these jurors have had with it." The trial court, at a subsequent hearing, denied the defendant's new trial motion and sentenced the defendant to death.[11] Durre thereafter filed this appeal.

The essence of the defendant's argument in this phase of the appeal is that the jury verdicts failed to satisfy the statutory requirement of unanimity essential to a verdict that directly results in the imposition of a death sentence. Before specifically addressing the merits of this claim, we focus on a preliminary issue raised by the People.

## II.

The People advance, as a threshold matter, the following argument in support of the proposition that the jury note accompanying the verdicts is irrelevant to the defendant's claim of a nonunanimous verdict:

---

10. The court began by asking two of the five jurors whether the note accurately reflected their "verdict." After they responded in the affirmative, the court merely called the names of the other three jurors, who also answered affirmatively.

11. The court sentenced James Manners, who had been tried in a consolidated proceeding with Durre on the substantive charges and also had been convicted of first degree murder, to life imprisonment after the same jury, in a separate sentencing hearing from the one at issue here, found the existence of two mitigating factors.

the jury's role in a capital sentencing hearing is limited to making factual findings on mitigation and aggravation; these findings required of the jury do not implicate in any manner any decision on punishment; therefore, the jury note expressing the views of each juror on the issue of punishment is mere surplusage and without legal significance to the verdicts on mitigation and aggravation. This argument, in our view, is built on the faulty premise that the jury findings on mitigation and aggravation involve no consideration whatever of the issue of punishment. A review of section 16–11–103, 8 C.R.S. (1973 & Supp.1983), which is the statutory scheme applicable to the defendant's trial and has been appended to this opinion, clearly shows that the jury's role in a capital sentencing hearing is not so totally separated from the issue of punishment as to render the jury's note necessarily irrelevant to the unanimity issue raised in this case.

Under subsection 16–11–103(1), whenever a jury returns a verdict of guilty to a class 1 felony, the trial court must conduct a sentencing hearing to determine whether the defendant should be sentenced to life imprisonment or death. The purpose of the statutory hearing is to objectify the punishment decision by requiring the jury to make findings as to the existence or nonexistence of mitigating and aggravating factors which relate to the particular circumstances of the offender and the crime in question. Subsection (2) provides that both the prosecution and the defendant may present any information relevant to the enumerated statutory aggravating factors. "[S]ubject to the rules governing admission of evidence at criminal trials," subsection (3) expressly imposes on the prosecution the burden of proving the existence of an aggravating factor beyond a reasonable doubt. With respect to proof of mitigating factors, however, the rules of evidence do not apply, although the court, pursuant to subsection (2), is authorized to

exercise discretion in denying the admission of repetitive evidence. Recognizing that limiting the jury's consideration to mitigating factors delineated in the statute would impair the defendant's right "to present any relevant information as to why the death sentence should not be imposed upon him," *People v. District Court,* 196 Colo. 401, 405, 586 P.2d 31, 34 (1978), subsection (5.1) requires the jury "to hear any other factors bearing on the question of mitigation."

The jury's verdicts on mitigation and aggravation are the sole determinants of whether the defendant is sentenced to life imprisonment or death. The statute in this respect divests the court of any discretion in the matter of sentence. If the jury determines that none of the subsection (5) mitigating factors are present and the jury does not regard any additional subsection (5.1) mitigating factor sufficient to justify a sentence of life imprisonment, the court must sentence the defendant to death as long as the jury finds beyond a reasonable doubt that at least one statutory aggravating factor listed in subsection (6) exists. In all other instances, the trial court must sentence the defendant to life imprisonment:

"If the sentencing hearing results in a verdict or finding that none of the aggravating factors set forth in subsection (6) of this section exist or that one or more of the mitigating factors set forth in subsection (5) of this section do exist or that evidence adduced pursuant to subsection (5.1) of this section justifies the imposition of a sentence of life imprisonment rather than death, the court shall sentence the defendant to life imprisonment. If the sentencing hearing is before a jury and the verdict is not unanimous, the jury shall be discharged, and the court shall sentence the defendant to life imprisonment." § 16–11–103(4), 8 C.R.S. (1973 & Supp.1983).[12]

12. Section 16–11–103(1), 8 C.R.S. (1973), states that "[i]f a trial jury was waived or if the defendant pleaded guilty, the hearing shall be conducted before the trial judge." The findings on mitigation and aggravation required of a jury are also applicable to a judge conducting a capital sentencing hearing. § 16–11–103(3), 8 C.R.S. (Supp.1983).

■ In light of the binding nature of the jury's findings on the trial court's capital sentencing decision, it becomes evident that the People's characterization of the jury's fact-finding role as legally insignificant to the issue of punishment is untenable.[13] Subsections (4) and (5.1) confirm this conclusion. Subsection (4) requires the jury to determine whether "sufficient mitigating factors have been presented pursuant to subsection (5.1) of this section to justify a sentence of life imprisonment rather than death." The mitigating factors encompassed within subsection (5.1) are in addition to the statutory mitigating factors in subsection (5) and include, but are not limited to, the following: the emotional state of the defendant at the time of the offense; the lack of any significant prior conviction on the part of the defendant; the extent of the defendant's cooperation with law enforcement officials or with the district attorney; the influence of drugs or alcohol on the defendant; the defendant's good faith but mistaken belief that there were circumstances constituting a moral justification for his conduct; the defendant's age at the time of the offense; whether the

defendant is a continuing threat to society; and any other evidence which the court believes bears on the question of mitigation. Colorado's statutory sentencing scheme thus makes clear that it is the fact-finding jury, and not the court, that decides whether there are additional mitigating circumstances sufficient to justify a sentence of life imprisonment rather than death.[14] A jury required to make this choice "can do little more—and must do nothing less—than express the conscience of the community on the ultimate question of life or death." *Witherspoon v. Illinois,* 391 U.S. 510, 519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968). In a very real sense, therefore, the jury's verdicts on aggravating, mitigating, and additional mitigating circumstances determine the punishment that the trial court must impose on the defendant.

### III.

Because jury verdicts constitute the ultimate and critical aspect of the fact-finding process in a criminal trial, they necessarily must be reliable. To insure this reliability,

13. The People attempt to analogize section 16–11–103 to the Texas capital sentencing scheme considered by the United States Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (plurality opinion). Although Texas' statutory scheme permits the capital sentencing jury to return factual findings, its analogy to the Colorado statutory scheme is tenuous at best. Under the Texas scheme, the capital sentencing jury is required to return affirmative or negative responses to three questions in light of the evidence: (1) whether the murder was deliberately committed with the reasonable expectation that death would result; (2) whether the defendant will commit acts of violence constituting a continuing threat to society; and (3) if raised by the evidence, whether the killing was unreasonable in response to the provocation, if any, of the deceased. Tex.Code Crim.Proc.Ann. art. 37.071 (Vernon 1981 & Supp.1984). If the jury answers all three questions in the affirmative, the trial court must sentence the defendant to death; any other verdict results in a life sentence. In Colorado, in contrast, the jury is required to consider three separate categories of mitigating, additional mitigating, and aggravating factors, including whether "sufficient mitigating factors have been presented pursuant to subsection (5.1) of this section [16–11–103] to justify a sentence of life

imprisonment rather than death." Thus, the Colorado jury, in its deliberative process, directly considers the question whether life imprisonment rather than death is the appropriate penalty under the evidence. Its deliberative function, in our view, is significantly more expansive than that of the Texas jury.

14. Section 16–11–103(5.1)(h), 8 C.R.S. (Supp. 1983), which requires the trier of fact to "hear any other factors bearing on the question of mitigation [including] ... [a]ny other evidence which in the court's opinion bears on the question of mitigation," does not establish trial court discretion to disregard a jury verdict finding the existence of a mitigating or an additional mitigating circumstance. When viewed in connection with the evidentiary rules set forth in subsection (2), it becomes apparent that subsection (5.1)(h) merely reaffirms the trial court's authority to deny the admission of irrelevant or repetitive mitigation evidence at the sentencing hearing. As stated in subsection (4), "[i]f the sentencing hearing results in a verdict ... that evidence adduced pursuant to subsection (5.1) ... justifies the imposition of a sentence of life imprisonment rather than death, *the court shall sentence the defendant to life imprisonment.*" (Emphasis added).

we have required that a criminal jury express its decision in terms that are "certain and devoid of ambiguity." *Yeager v. People,* 170 Colo. 405, 410, 462 P.2d 487, 489 (1969). "There is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." *United States v. Morris,* 612 F.2d 483, 489 (10th Cir.1979) (quoting *Cook v. United States,* 379 F.2d 966, 970 (5th Cir.1967)); *accord, e.g., Sincox v. United States,* 571 F.2d 876 (5th Cir.1978); *Lewis v. United States,* 466 A.2d 1234 (D.C.App.1983). What is required is that a criminal verdict be "phrased in words which convey beyond a reasonable doubt the meaning and intention of the jury." *Yeager,* 170 Colo. at 410, 462 P.2d at 489; *see Kreiser v. People,* 199 Colo. 20, 604 P.2d 27 (1979); *Johnson v. People,* 174 Colo. 75, 482 P.2d 105 (1971); *People v. Goetz,* 41 Colo.App. 60, 582 P.2d 698 (1978). This requirement is not intended to elevate form over substance but, rather, to assure the existence of that level of moral certainty implicit in the reasonable doubt standard applicable to criminal trials.

In recognition of the need for certainty in the jury's ultimate decision in a criminal trial, the General Assembly has mandated that "[t]he verdict of the jury shall be unanimous." § 16–10–108, 8 C.R.S. (1973). *See also* § 18–1–106(1), 8 C.R.S. (1973); Crim.P. 23(a)(8) and 31(a)(3). Unanimity enhances the certainty of the verdict as well as the reliability of the deliberative process underlying the verdict. *United States v. Lopez,* 581 F.2d 1338 (9th Cir. 1978); *United States v. Scalzitti,* 578 F.2d 507 (3d Cir.1978). The General Assembly has expressly extended this unanimity requirement to capital sentencing hearings. § 16–11–103(4), 8 C.R.S. (Supp.1983). If a jury cannot return a unanimous verdict, section 16–11–103(4) requires the trial court to discharge the jury and to sentence the defendant to life imprisonment.

■ Inasmuch as death as a punishment is unique in its severity and irrevocability, the need for reliability in a capital sentencing hearing conducted under section 16–11–103 takes on added significance. By virtue of the qualitative difference between death and any other permissible form of punishment, "there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983) (quoting *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion)). While technical perfection in the deliberative process is not demanded and is often an impossibility, the severity of the death sentence does mandate "careful scrutiny in the review of any colorable claim of error." *Zant,* 103 S.Ct. at 2747; *accord, e.g., California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 3451, 77 L.Ed.2d 1171 (1983); *Eddings v. Oklahoma,* 455 U.S. 104, 110–12, 102 S.Ct. 869, 873–75, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion). A verdict in a capital case must be certain and its meaning and construction cannot be left to doubt or speculation.

■ Because under Colorado's capital sentencing procedures the jury's resolution of the existence of mitigating, additional mitigating, and aggravating circumstances necessarily involves a determination of whether life imprisonment as opposed to a death sentence is justified under the evidence, the certainty essential to a jury verdict directly resulting in death can only be achieved when the jurors are clearly instructed concerning the effect of their verdicts on the ultimate question of life imprisonment or death. Without such an instruction, the jury will not only be required to labor in the dark about what it is actually deciding by its verdicts but also, of equal importance, will be ill-equipped to fulfill its function of serving as the vital link between contemporary community values and the propriety of the life-and-death decision which its verdicts necessarily resolve.

A basic flaw in the trial court's instructions, as related to the issue of unanimity, is the failure to inform the jury of the effect of its verdicts on the issue of punish-

ment. Indeed, when the jury verdicts and the jury note are considered against the backdrop of this instructional deficiency, there is sufficient doubt cast on the unanimous character of the verdicts returned as to render them uncertain and unreliable. Although the jury was required to determine in Verdict Form No. II whether there were additional mitigating factors sufficient to justify life imprisonment, the jury was never advised that a finding of no mitigating circumstance in Verdict Form No. I or no additional mitigating circumstance in Verdict Form No. II and that a further finding of one or more aggravating circumstances in Verdict Form No. III categorically eliminated the possibility of a life sentence and necessarily required the imposition of the death penalty. For all that appears in Instruction No. 1, the jury could reasonably have believed that a finding of no mitigating and no additional mitigating circumstances and a finding of one or more aggravating circumstances merely vested the trial court with discretion on the issue of penalty. The jury note, in which seven jurors indicated they were in agreement with the death sentence "if the Court so chooses" and five jurors requested life imprisonment, suggests nothing less.

■ Without having been informed about the effect of their verdicts on life imprisonment or death, we fail to see how the jurors could make an informed decision in Verdict Form No. II on whether there was any additional mitigating circumstance sufficient to justify a sentence of life imprisonment rather than death. *See State v. Williams*, 392 So.2d 619 (La.1980) (death penalty reversed, on rehearing, when jury not informed that, in the event of inability to unanimously agree upon recommendation of punishment, trial court would be required to impose life sentence without benefit of probation, parole, or suspension); *Brown v. Commonwealth*, 445 S.W.2d 845 (Ky.1969) (death sentence set aside where jury verdict fixed penalty at "death with clemency" because it could not be determined with any degree of certainty whether the words "with clemency" constituted qualified or conditional verdict). We hold that, in order to eliminate any uncertainty on the part of jurors regarding the effect of their verdicts on the issue of punishment, trial courts at the conclusion of the evidentiary stage of a capital sentencing hearing must inform the jury by an appropriate instruction that verdicts of no mitigating and no additional mitigating circumstances and a verdict of one or more aggravating circumstances necessarily require the imposition of a death sentence; that a verdict of mitigating or additional mitigating circumstances, or a verdict of no aggravating circumstances, necessarily requires the imposition of a sentence to life imprisonment; and that under no circumstances does the court have any discretion on the matter of penalty.[15]

The jury note, when viewed in the context of the instructional deficiency present here, manifests a significant degree of uncertainty on whether all twelve jurors actually concurred in the finding, expressed in Verdict No. II, that there were no "additional mitigating circumstances sufficient to justify a life sentence rather than death to be present." As noted in *Yeager*, 170 Colo. at 409, 462 P.2d at 489, the "obvious thing" for the jury to have done if unanimity existed on the verdicts would have been

---

**15.** An instruction couched in the following or similar terms will satisfy the requirement we adopt in this opinion:

"If your verdicts are that no mitigating and no additional mitigating circumstances exist, and further that one or more aggravating circumstances exist, then the court has no discretion whatever on the matter of penalty and must sentence the defendant to death; if, on the other hand, your verdicts are that one or more of the mitigating or additional mitigating circumstances exist, or that none of the aggravating circumstances exist, then the court has no discretion whatever on the issue of punishment and must sentence the defendant to life imprisonment."

Although the trial court at the outset of the sentencing hearing advised the jurors that their verdicts "will determine what penalty shall be imposed," such advice told the jurors nothing whatever about the effect of their verdicts on the life and death decision that the jurors were being required to make.

to return the verdict forms appropriately signed with nothing more. The decision to prepare an addendum is a strong indication that five jurors might well have conditioned their concurrence in Verdict No. II on the court's imposition of a life sentence. *See generally Hackett v. People,* 8 Colo. 390, 8 P. 574 (1885); *Brown,* 445 S.W.2d 845. The subsequent polling of the jury did nothing to dispel the qualified or conditional nature of the verdicts. Although each of the twelve jurors acknowledged that he or she concurred in the three verdicts, five of the jurors, in response to the court's further inquiry about the note, quite clearly indicated that their written request for life imprisonment also was their "verdict." The jury note thus raises substantial doubt about the unanimous concurrence of all twelve jurors to the finding, expressed in Verdict No. II, that there were no additional mitigating circumstances sufficient to justify a life sentence rather than death. Under the particular circumstances of this case, the note cannot be regarded as mere surplusage.

The contents of the note, compounded by the lack of an adequate instruction informing the jurors of the effect of their verdicts on the ultimate question of life imprisonment or death, raise such a doubt with respect to the unconditional and unqualified character of the verdicts as to undermine the statutory requirement of unanimity mandated by section 16–11–103(4) for capital sentencing verdicts. A doubt of this magnitude must be resolved in favor of the accused. *Andres v. United States,* 333 U.S. 740, 752, 68 S.Ct. 880, 885, 92 L.Ed. 1055 (1948). The district court, therefore, erred in accepting the verdicts returned by the jury and imposing the sentence of death based thereon.

We reverse the sentence of death and remand the case to the district court for the limited purpose of entering a sentence of life imprisonment, with directions to immediately return the case to this court for resolution of other issues which are pending before this court and which relate to the guilt phase of the defendant's trial.

APPENDIX: § 16–11–103, 8 C.R.S. (1973 & Supp.1983)

**16–11–103. Imposition of sentence in class 1 felonies.** (1) Upon conviction of guilt of a defendant of a class 1 felony, the trial court shall conduct a separate sentencing hearing to determine whether the defendant should be sentenced to death or life imprisonment. The hearing shall be conducted by the trial judge before the trial jury as soon as practicable. If a trial jury was waived or if the defendant pleaded guilty, the hearing shall be conducted before the trial judge.

(2) In the sentencing hearing any information relevant to any of the aggravating or mitigating factors set forth in subsection (5), (5.1), or (6) of this section may be presented by either the people or the defendant, subject to the rules governing admission of evidence at criminal trials; except that, in the proof of mitigating factors set forth in subsection (5) and (5.1) of this section, the rules of evidence shall not apply. The court, in its discretion, may act to deny the admission of evidence that is repetitive. The people and the defendant shall be permitted to rebut any evidence received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the evidence to establish the existence of any of the factors set forth in subsection (5), (5.1), or (6) of this section. Nothing in this subsection (2) shall be construed to authorize the introduction of any evidence obtained in violation of the constitution of this state or the constitution of the United States.

(3) After hearing all the evidence, the jury shall deliberate and render a verdict, or if there is no jury the judge shall make a finding as to the existence or nonexistence of each of the factors set forth in subsections (5), (5.1), and (6) of this section. The existence of an aggravating factor shall be proved by the prosecution beyond a reasonable doubt.

(4) If the sentencing hearing results in a verdict or finding that none of the factors set forth in subsection (5) of this section exist and that one or more of the factors

set forth in subsection (6) of this section do exist, the court shall sentence the defendant to death, unless the verdict or finding is that sufficient mitigating factors have been presented pursuant to subsection (5.1) of this section to justify a sentence of life imprisonment rather than death. In the event the verdict or finding is based on mitigating evidence introduced pursuant to subsection (5.1) of this section, the trier of fact shall set forth in writing the mitigating factor or factors which were regarded as sufficient to justify a sentence of life imprisonment rather than death. If the sentencing hearing results in a verdict or finding that none of the aggravating factors set forth in subsection (6) of this section exist or that one or more of the mitigating factors set forth in subsection (5) of this section do exist or that evidence adduced pursuant to subsection (5.1) of this section justifies the imposition of a sentence of life imprisonment rather than death, the court shall sentence the defendant to life imprisonment. If the sentencing hearing is before a jury and the verdict is not unanimous, the jury shall be discharged, and the court shall sentence the defendant to life imprisonment.

(5) The court shall not impose the sentence of death on the defendant if the sentencing hearing results in a verdict or finding that at the time of the offense:

(a) He was under the age of eighteen; or

(b) His capacity to appreciate wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution; or

(c) He was under unusual and substantial duress, although not such duress as to constitute a defense to prosecution; or

(d) He was a principal in the offense, which was committed by another, but his participation was relatively minor, although not so minor as to constitute a defense to prosecution; or

(e) He could not reasonably have foreseen that his conduct in the course of the commission of the offense for which he was convicted would cause, or would create a grave risk of causing, death to another person.

(5.1) In addition to the mitigating factors set forth in subsection (5) of this section, the trier of fact shall hear any other factors bearing on the question of mitigation. Such factors include, but are not limited to, the following:

(a) The emotional state of the defendant at the time the crime was committed;

(b) The absence of any significant prior conviction;

(c) The extent of the defendant's cooperation with law enforcement officers or agencies and with the office of the prosecuting district attorney;

(d) The influence of drugs or alcohol;

(e) The good faith, although mistaken, belief by the defendant that circumstances existed which constituted a moral justification for the defendant's conduct;

(f) The age of the defendant at the time of commission of the crime;

(g) The defendant is not a continuing threat to society; or

(h) Any other evidence which in the court's opinion bears on the question of mitigation.

(6) If no factor set forth in subsection (5) of this section is present or if the trier of fact does not regard as sufficient any other mitigating factor or factors as justifying a sentence of life imprisonment, the court shall sentence the defendant to death if the sentencing hearing results in a verdict or finding that:

(a) The defendant has previously been convicted by a court of this or any other state, or of the United States, of an offense for which a sentence of life imprisonment or death was imposed under the laws of this state or could have been imposed under the laws of this state if such offense had occurred within this state; or

(b) He killed his intended victim or another, at any place within or without the confines of a penal or correctional institution, and such killing occurred subsequent

to his conviction of a class 1, 2, or 3 felony and while serving a sentence imposed upon him pursuant thereto; or

(c) He intentionally killed a person he knew to be a peace officer, fireman, or correctional official. The term "peace officer" as used in this section means only a regularly appointed police officer of a city, marshall of a town, sheriff, undersheriff, or deputy sheriff of a county, state patrol officer, or agent of the Colorado bureau of investigation; or

(d) He intentionally killed a person kidnapped or being held as a hostage by him or by anyone associated with him; or

(e) He has been a party to an agreement to kill another person in furtherance of which a person has been intentionally killed; or

(f) He committed the offense while lying in wait, from ambush, or by use of an explosive or incendiary device. As used in this paragraph (f), explosive or incendiary device means:

(I) Dynamite and all other forms of high explosives;

(II) Any explosive bomb, grenade, missle, or similar device; or

(III) Any incendiary bomb or grenade, fire bomb, or similar device, including any device which consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and can be carried or thrown by one individual acting alone; or

(g) He committed a class 1, 2, or 3 felony and, in the course of or in furtherance of such or immediate flight therefrom, he intentionally caused the death of a person other than one of the participants; or

(h) In the commission of the offense, he knowingly created a grave risk of death to another person in addition to the victim of the offense; or

(i) He committed the offense in an especially heinous, cruel, or depraved manner.

(7)(a) Whenever a sentence of death is imposed upon a person pursuant to the provisions of this section, the supreme court shall review the propriety of that sentence, having regard to the nature of the offense, the character and record of the offender, the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based. The procedures to be employed in the review shall be as provided by supreme court rule.

(b) A sentence of death shall not be imposed pursuant to this section if the supreme court determines that the sentence was imposed under the influence of passion or prejudice or any other arbitrary factor or that the evidence presented does not support the finding of statutory aggravating circumstances.