The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Michael TENNESON, Defendant–Appellee.

The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Timothy VIALPANDO, Defendant–Appellee.

Nos. 88SA144, 88SA258.

Supreme Court of Colorado, En Banc.

March 12, 1990.

As Modified on Denial of Rehearing April 2, 1990.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coates, Chief Deputy Dist. Atty., and Joan C. White, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, and Terri L. Brake, Chief Deputy Public Defender, Denver, for defendants-appellees.

Justice LOHR delivered the Opinion of the Court.

Pursuant to section 16–12–102(1), 8A C.R.S. (1986), the prosecution challenges the penalty phase instructions in two death penalty cases, *People v. Tenneson*, No. 88SA144, and *People v. Vialpando*, No. 88SA258.[1] In each case, the trial court instructed the jury that in order to sentence the defendant to death the jurors must find that the proven statutory aggravating factors outweigh any mitigating factors beyond a reasonable doubt and that

---

1. Pursuant to § 16–12–102(1), the prosecution "may appeal any decision of the trial court in a criminal case upon any question of law." Both Tenneson and Vialpando received life sentences imposed by the trial courts due to the juries' inability to reach verdicts concerning the penal-
ty. *See* § 16–11–103(2)(d), 8A C.R.S (1986). This appeal does not challenge the validity of those sentences and does not place either Tenneson or Vialpando in jeopardy of receiving the death penalty.

death is the appropriate penalty beyond a reasonable doubt. Each court also instructed the jury that there is a presumption in favor of life imprisonment. The prosecution takes issue with those instructions. The prosecution further challenges the instruction given in *Tenneson* that the jury must consider as mitigating circumstances a list of forty-five statements concerning the defendant and the crime he committed. We approve the trial courts' instructions regarding the burden of establishing that death is the appropriate penalty and also hold that the trial courts acted within their discretion in giving the instructions concerning a presumption of life imprisonment. We disapprove the trial courts' instructions requiring that aggravating factors outweigh mitigating factors. We also conclude that the *Tenneson* court erred in instructing the jury that it must consider certain statements of purported fact as mitigating circumstances.

## I.

The sentencing phase of a trial for a capital offense is governed by section 16–11–103, 8A C.R.S. (1986).[2] After a defendant has been found guilty of a capital offense and a sentencing hearing has been conducted, the jury must determine whether the defendant will be sentenced to life imprisonment or to death. The jury is instructed to follow a four-step process. First, the jury must determine if at least one of the statutory aggravating factors exists. §§ 16–11–103(2)(a)(I),-(6). If the jury does not unanimously agree that the prosecution has proven the existence of at least one statutory aggravator beyond a reasonable doubt, the defendant must be sentenced to life imprisonment. §§ 16–11–103(1)(d),-(2)(b)(I),-(2)(c). Second, if the jury has found that at least one statutory ag-

gravating factor has been proven, the jury must then consider whether any mitigating factors exist. §§ 16–11–103(2)(a)(II),-(5). "There shall be no burden of proof as to proving or disproving mitigating factors," § 16–11–103(1)(d), and the jury need not unanimously agree upon the existence of mitigating factors. *See McKoy v. North Carolina,* —— U.S. ——, ——, 110 S.Ct. 1227, 1233–34, —— L.Ed.2d —— (1990); *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 1865–66, 100 L.Ed.2d 384 (1988). Third, the jury must determine whether "sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist." § 16–11–103(2)(a)(II). Fourth, and finally, if the jury finds that any mitigating factors do not outweigh the proven statutory aggravating factors, it must decide whether the defendant should be sentenced to death or to life imprisonment. § 16–11–103(2)(a)(III).[3]

The prosecution challenges the instructions given in both *Tenneson* and *Vialpando* regarding the third and fourth steps in the juries' sentencing deliberations.[4] The prosecution argues that in both cases the juries were erroneously instructed, over the prosecution's objections, that in order to sentence the defendants to death, statutory aggravating factors must outweigh any mitigating factors beyond a reasonable doubt and death must be proven to be the appropriate penalty beyond a reasonable doubt, and that there is a presumption in favor of life imprisonment. We consider the challenges to these instructions in turn in parts II, III and IV of this opinion.

## II.

Section 16–11–103(2)(a)(II), 8A C.R.S. (1986), does not specify the standard to be used in determining whether "suffi-

---

**2.** § 16–11–103 was amended substantially on April 11, 1988. Ch. 114, secs. 1 and 2, § 16–11–103, 1988 Colo.Sess. Laws 673–75. The amendments took effect on July 1, 1988, and apply to offenses committed on or after that date. Because both Tenneson and Vialpando committed their offenses before that date, these cases are decided under the previous version of the statute. Unless otherwise noted, all references to Colorado's death penalty statute in this

opinion are to the version in effect at the times relevant to the *Tenneson* and *Vialpando* trials.

**3.** The 1988 amendments to § 16–11–103 collapsed the sentencing process into three steps, eliminating step four. *See* n. 2, above.

**4.** Relevant portions of the challenged instructions appear in the appendix to this opinion.

cient mitigating factors exist which outweigh any aggravating factor or factors found to exist." We now hold that before a defendant may be sentenced to death the jury must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors.

### A.

The death penalty statute at issue in the present case was enacted against a background of decisions of the United States Supreme Court beginning with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), considering whether the death penalty statutes of other states violated the eighth amendment's proscription of "cruel and unusual punishments" as that proscription is made applicable to the states through the fourteenth amendment. *See* U.S. Const. amends. VIII, XIV; *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).[5] The Colorado statute now before us was adopted after we struck down an earlier death penalty statute for failure to satisfy eighth amendment standards as articulated in those decisions of the United States Supreme Court. *See People v. District Court,* 196 Colo. 401, 586 P.2d 31 (1978). The general assembly adopted the new legislation in a series of efforts to establish criteria and procedures for imposition of the death penalty that would remedy the deficiencies in the prior statute and satisfy federal constitutional standards. Federal constitutional standards are highly relevant, therefore, in determining the meaning of our own statute.

█ In order to assure that the death penalty will not be imposed in violation of the eighth amendment's proscription of cruel and unusual punishments, a capital sentencing scheme must meet at least two requirements. First, the discretion of the sentencer must be "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976); *accord Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988); *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 2532, 96 L.Ed.2d 440 (1987); *Godfrey v. Georgia,* 446 U.S. 420, 427–28, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980); *Proffitt v. Florida,* 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976). The statutory scheme "must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988) (quoting *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983)); *accord Jurek v. Texas,* 428 U.S. 262, 270–71, 96 S.Ct. 2950, 2955–56, 49 L.Ed.2d 929 (1976); *People v. District Court,* 196 Colo. at 405, 586 P.2d at 34. One means of narrowing the class is by prescribing aggravating circumstances that must exist before the death penalty may be imposed. *Blystone v. Pennsylvania,* — U.S. —, —, 110 S.Ct. 1078, 1080, — L.Ed.2d — (1990). "The use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion." *Lowenfield,* 484 U.S. at 244, 108 S.Ct. at 554.

█ Second, in order to achieve constitutional validity, a capital sentencing scheme must allow the sentencing body to consider any relevant mitigating evidence regarding the defendant's character and background and the circumstances of the offense. *Boyde v. California,* — U.S. —, —, 110 S.Ct. 1190, 1195–96, — L.Ed.2d — (1990); *Penry v. Lynaugh,* — U.S. —, 109 S.Ct. 2934, 2946, 106 L.Ed.2d 256 (1989); *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 1670, 90 L.Ed.2d 1 (1985); *Eddings v. Oklahoma,* 455 U.S. 104, 110–12, 102 S.Ct. 869, 874–76, 71

---

5. The Colorado Constitution also prohibits cruel and unusual punishments. Colo. Const. art. II, § 20.

L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978); *People v. District Court*, 196 Colo. at 405, 586 P.2d at 34. This is "a constitutionally indispensable part of the process of inflicting the penalty of death" and is based upon "the fundamental respect for humanity underlying the Eighth Amendment." *Penry*, 109 S.Ct. at 2945 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)).

Colorado's capital sentencing scheme narrows the group of persons convicted of first degree murder who may be subjected to a death sentence by requiring that before such a sentence can be imposed at least one of a specified group of aggravating factors be established to the satisfaction of a jury beyond a reasonable doubt. §§ 16–11–103(2)(a)(I), 103(6)(a)–(k). The statute then allows both the prosecution and the defendant to present evidence relevant to the nature of the crime and the character and background of the defendant in order to provide information based upon which the jurors can decide whether any mitigating factors exist. A nonexclusive list of mitigating factors is set forth as a guide. § 16–11–103(5).[6] This process provides the jurors with information that they can use to decide whether a convicted defendant within the narrowed group should receive a sentence of death or life imprisonment. § 16–11–103(1)(b), (2).

The statute describes the decision process as one of weighing. The jury is to decide "[w]hether sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist." § 16–11–103(2)(a)(II). If sufficient mitigating factors do not exist, then the jury must go on to determine whether a defendant should be sentenced to death or life impris-

onment. "Unlike the determination of guilt or innocence, which turns largely on an evaluation of objective facts, the question whether death is the appropriate sentence requires a profoundly moral evaluation of the defendant's character and crime." *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 1800, 100 L.Ed.2d 284 (1988) (Marshall, J., concurring in part and concurring in the judgment); *see Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 2333, 101 L.Ed.2d 155 (1988) (O'Connor, J., concurring in judgment) (sentence imposed at penalty stage should reflect a reasoned moral response to the defendant's background, character and crime); *California v. Brown*, 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring) (same). The determination whether any mitigating factors outweigh the statutory aggravating factors, therefore, requires each juror to make a judgment based on an assessment and comparison of the weightiness of each of the aggravating factors proven beyond a reasonable doubt and any mitigating factors that may exist.

Death is a punishment qualitatively different from any other. *E.g., Lockett*, 438 U.S. at 604, 98 S.Ct. at 2964; *Woodson*, 428 U.S. at 303–05, 96 S.Ct. at 2990–92; *People v. District Court*, 196 Colo. at 404, 586 P.2d at 33. Because of the unique severity and finality of a sentence to death, the United States Supreme Court has emphasized the heightened need for sentencing reliability in capital cases. *See, e.g., Mills*, 108 S.Ct. at 1870; *Lowenfield*, 484 U.S. at 238–39, 108 S.Ct. at 550–51 (1988); *California v. Ramos*, 463 U.S. 992, 998–99, 103 S.Ct. 3446, 3451–52, 77 L.Ed.2d 1171 (1983); *Lockett*, 438 U.S. at 604, 98 S.Ct. at 2964; *Woodson*, 428 U.S. at 305, 96 S.Ct. at 2991;[7] *see also The Supreme Court, 1988*

---

**6.** The list is nonexclusive because § 16–11–103(5)(*l*), the final item on the list, is "[a]ny other evidence which in the court's opinion bears on the question of mitigation."

**7.** Concurring in the judgment in *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), Justice O'Connor stated:

Under the Eighth Amendment, the death penalty has been treated differently from all

other punishments. See, *e.g., California v. Ramos*, 463 U.S. 992, 998–999, and n. 9, 103 S.Ct. 3446, 3451–3452, and n. 9, 77 L.Ed.2d 1171 (1983). Among the most important and consistent themes in this Court's death penalty jurisprudence is the need for special care and deliberation in decisions that may lead to the imposition of that sanction. The Court has accordingly imposed a series of unique substantive and procedural restrictions de-

*Term—Leading Cases,* 103 Harv.L.R. 137, 153 (1989) ("The Court has consistently invalidated sentencing provisions and procedures [in death penalty cases] that it has found unreliable."). The qualitatively unique and irretrievably final nature of the death penalty "makes it unthinkable for jurors to impose the death penalty when they harbor 'a reasonable doubt as to its justness.'" *State v. Bey,* 112 N.J. 123, 548 A.2d 887, 903 (1988) (quoting *State v. Biegenwald,* 106 N.J. 13, 524 A.2d 130, 155 (1987)). This concern for the reliability of a jury verdict of death finds expression in United States Supreme Court decisions requiring that a jury's determination to impose the penalty of death reflect the conviction of each juror, guided by constitutionally sufficient statutory standards. *Gregg,* 428 U.S. at 195, 96 S.Ct. at 2935. Our own decisions also have recognized that "the unique severity and irrevocability" of the death sentence creates an "enhanced need for certainty and reliability" in its application. *People v. Drake,* 748 P.2d 1237, 1254 (Colo.1988); *accord People v. Durre,* 690 P.2d 165, 173 (Colo.1984).[8]

■ Colorado's death sentencing statute must be construed in light of the strong concern for reliability of any sentence of death. We are persuaded, therefore, that the statute must be interpreted to require that in order to support the imposition of the death penalty, each juror must be convinced that the mitigating factors, if any, do not weigh more heavily in the balance than the proven statutory aggravating factors. An instruction to the jury that they must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors before a sentence of death can be imposed adequately and appropriately communicates the degree of reliability that must inhere in the balancing process. *See Ford v. Strickland,* 696 F.2d 804, 879 (11th Cir.) (Anderson, J., concurring in part and dissenting in part) (in the penalty phase of capital murder prosecution, the beyond a reasonable doubt standard prescribes the "level of confidence" that the jury should have in its decision), *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); *State v. Wood,* 648 P.2d 71, 84 (Utah), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982).[9] We are persuaded that the legislature,

---

signed to ensure that capital punishment is not imposed without the serious and calm reflection that ought to precede any decision of such gravity and finality.
*Id.* 108 S.Ct. at 2710 (O'Connor, J., concurring). Justice O'Connor then goes on to give examples of the unique substantive and procedural restrictions applicable in death penalty proceedings. *See id.; see also Strickland v. Washington,* 466 U.S. 668, 704, 104 S.Ct. 2052, 2073, 80 L.Ed.2d 674 (1984) (Brennan, J., concurring in part and dissenting in part) (capital proceedings must be policed at all stages by an especially vigilant concern for procedural fairness and accurate fact-finding); *People v. Durre,* 690 P.2d 165, 173 (Colo.1984).

8. In *Durre,* we required that a jury verdict in the sentencing phase of a capital case be expressed in terms certain and devoid of ambiguity "to assure the existence of that level of moral certainty implicit in the reasonable doubt standard applicable to criminal trials." *Durre,* 690 P.2d at 173.

9. We recognize that the United States Supreme Court has "never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required." *Franklin,* 108 S.Ct. at 2330 (plurality opinion); *see Zant v. Stephens,* 462 U.S.

862, 875–76 n. 13, 103 S.Ct. 2733, 2741–42 n. 13, 77 L.Ed.2d 235 (1983); *Proffitt,* 428 U.S. at 258, 96 S.Ct. at 2969; *Durre,* 690 P.2d at 168 n.
8. Our construction of the Colorado statute is not grounded on a holding that the standard we adopt is necessarily mandated by the eighth and fourteenth amendments to the United States Constitution. Rather, we are convinced that the general assembly in its concern to assure that the death penalty statute would pass constitutional muster, and in light of the fact that reliability is an essential component of a constitutionally sufficient death sentencing procedure, intended to require that each juror have a high degree of confidence that any verdict of death be correct and appropriate.

In adopting this statutory construction, we ally ourselves with other states that have construed their own statutes to require that the beyond a reasonable doubt standard be employed in the weighing process. *Biegenwald,* 524 A.2d at 151; *Wood,* 648 P.2d at 79; *see State v. Hunt,* 323 N.C. 407, 373 S.E.2d 400 (1988) (upholding a "beyond a reasonable doubt" instruction); *see also Edwards v. State,* 452 So.2d 487, 502 (Ala.Crim.App.1982) (quoting trial court instruction imposing reasonable doubt standard in weighing process, and affirming trial court judgment after combing record for error), *rev'd on other grounds,* 452 So.2d 506 (Ala.

though not explicitly addressing the issue, could have intended no lighter a burden.[10]

### B.

■ The prosecution argues that the beyond a reasonable doubt standard is appropriate only for determining the existence of facts and not for the individual sentencing decision to be made by weighing aggravating factors against mitigating factors. The prosecution contends that the jury's function in weighing aggravating and mitigat-

1983). Other states' statutes explicitly mandate the beyond a reasonable doubt standard for weighing aggravating and mitigating factors. Ark.Stat.Ann. § 5–4–603 (1987); Ohio Rev.Code Ann. § 2929.03(D)(2)–(3) (Page 1987); Wash. Rev.Code § 10.95.060(4) (1987); cf. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) (Missouri Approved Criminal Jury Instructions use the beyond a reasonable doubt standard). Some of the foregoing state authorities require that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt. *E.g.*, *Biegenwald*, 524 A.2d 130. We conclude that the language of Colorado's death penalty statute precludes that formulation of the test and requires instead that the jury be satisfied beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors.

Other courts, however, have rejected the use of the reasonable doubt standard in the process of weighing aggravating and mitigating circumstances. *People v. Jennings*, 46 Cal.3d 963, 251 Cal.Rptr. 278, 760 P.2d 475 (1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1559, 103 L.Ed.2d 862 (1989); *McKenna v. State*, 101 Nev. 338, 705 P.2d 614 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Turner v. Commonwealth*, 234 Va. 543, 364 S.E.2d 483 (1988), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *see also Andrews v. Shulsen*, 802 F.2d 1256 (10th Cir.1986) (habeas corpus arising out of Utah conviction), *cert. denied*, 485 U.S. 919, 108 S.Ct. 1091, 99 L.Ed.2d 253 (1988); *Ford v. Strickland*, 696 F.2d 804 (11th Cir.1983) (habeas corpus arising from Florida conviction), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); *Gray v. Lucas*, 685 F.2d 139 (5th Cir.1982) (habeas corpus stemming from Mississippi conviction), *cert. denied*, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983). The federal habeas corpus cases necessarily are based on interpretation of federal constitutional standards.

10. Florida's death penalty statute does not employ the beyond a reasonable doubt standard in the weighing process. Although the legislative history of § 16–11–103 contains a statement in committee by one of the sponsors that the statute was based on Florida's law and also contains committee testimony of one of the drafters, an assistant district attorney, that the provisions for weighing the aggravating and mitigating circumstances were patterned after the Florida act, the Florida death penalty statute upheld in *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), is quite different from the Colorado statute at issue in this case. At the sentencing stage, a Florida jury is advisory only.

It renders an advisory sentence of death or life imprisonment based upon whether sufficient statutory aggravating factors exist, whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist and, based on these considerations, whether the defendant should be sentenced to life imprisonment or death. Fla.Stat.Ann. § 921.141(2) (1985). Notwithstanding the recommendation of the jury, the court, after weighing the aggravating and mitigating circumstances, determines independently whether to impose a sentence of life imprisonment or death. If the court imposes a death sentence it must make specific written findings, based on the facts, that sufficient statutory aggravating factors exist and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances. In order to sustain a sentence of death following a jury recommendation of life, " 'the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.' " *Proffitt*, 428 U.S. at 249, 96 S.Ct. at 2965 (plurality opinion of Stewart, Powell and Stevens, JJ.) (quoting *Tedder v. State*, 322 So.2d 908, 910 (Fla.1975)). In upholding this sentencing scheme, the plurality opinion of the United States Supreme Court noted that the risk that the death penalty would be imposed in an arbitrary and capricious manner was adequately minimized by the requirement of justification by written judicial findings; the exercise of sentencing authority by a trial judge, who "is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases"; and by Florida's appellate review system "under which the evidence of aggravating and mitigating circumstances is reviewed and reweighed by the Supreme Court of Florida 'to determine independently whether the imposition of the ultimate penalty is warranted.' " *Id.* at 251–53 (quoting *Songer v. State*, 322 So.2d 481, 484 (Fla.1975)). The United States Supreme Court also noted that the Supreme Court of Florida had assumed an active role in review of death sentences, having overturned eight of twenty-one that it had previously reviewed, *id.* 428 U.S. at 253, 96 S.Ct. at 2967 (plurality opinion), and that it must review each death sentence to ensure that similar results are reached in similar cases. *Id.* at 258, 96 S.Ct. at 2969; *see Barclay v. Florida*, 463 U.S. 939, 952–956, 103 S.Ct. 3418, 3426–28, 77 L.Ed.2d 1134 (1983). Decisions based on the Florida statute, therefore, are of limited value in interpreting or assessing the constitutionality of the Colorado statute.

ing factors during the penalty stage of a death penalty trial is more akin to the role of a sentencing judge in a non-capital case than to the role of a fact-finder. *See California v. Ramos*, 463 U.S. 992, 1008 n. 21, 103 S.Ct. 3446, 3457 n. 21, 77 L.Ed.2d 1171 (1983) (sentencing decisions in capital cases rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof that returning a conviction does). Although we agree that the determination of the relative weight of aggravating and mitigating factors is a process quite different from fact-finding, we are persuaded that the term "beyond a reasonable doubt" serves well to communicate to the jurors the degree of certainty that they must possess that any mitigating factors do not outweigh the proven statutory aggravating factors before arriving at the ultimate judgment that death is the appropriate penalty. *Wood*, 648 P.2d at 84 (the beyond a reasonable doubt standard "conveys to a decision maker a sense of the solemnity of the task and the necessity for a high degree of certitude ... in imposing the death penalty."); *see Biegenwald*, 524 A.2d at 156 (adopting a beyond a reasonable doubt standard for weighing aggravating and mitigating factors while recognizing that the weighing process is a judgmental determination based on conflicting values, not a fact-finding process).

In another context the United States Supreme Court has held that a "clear and convincing" standard of proof—a standard usually employed to require heightened reliability in fact-finding—is appropriate to describe a required degree of certainty in a process of weighing values. *See Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). In *Addington*, the United States Supreme Court held that due process requires clear and convincing proof before an individual can be committed involuntarily in a mental health proceeding. The Court held that a person can be so committed only upon a finding by clear and convincing evidence that the danger to the individual and society if commitment is not ordered exceeds the cost to the individual that would result from the loss of liberty incident to a mental health commitment.

Similarly, the beyond a reasonable doubt standard as applied to the weighing of aggravating and mitigating factors serves to assure the degree of reliability necessary to support a verdict of death in a sentencing proceeding.

### C.

General constitutional principles concerning the burden of proof of facts in criminal proceedings also support by analogy the result we reach today. Due process of law "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1969); *accord Kogan v. People*, 756 P.2d 945, 950 (Colo.1988). This high standard "is a prime instrument for reducing the risk of convictions resting on factual error." *In re Winship*, 397 U.S. at 363, 90 S.Ct. at 1072. The requirement of proof beyond a reasonable doubt is supported by cogent reasons:

The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is a reasonable doubt about his guilt. As we said in *Speiser v. Randall*, 357 U.S. 513, 525–26 [78 S.Ct. 1332, 1341–42, 2 L.Ed.2d 1460] (1958): "There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of ... persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of ...

convincing the factfinder of his guilt." To this end, the reasonable-doubt standard is indispensable, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue." [Citation omitted.]

Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned.

*Id.* at 363–64, 90 S.Ct. at 1072–73. These considerations assume profoundly greater importance in the process of determining whether a person convicted of murder shall be sentenced to death. They further inform and undergird our analysis of the degree of certainty our statute requires each juror to possess in order to support a conclusion that the balance between aggravating and mitigating circumstances tips in favor of death. An instruction that the jury must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors before a defendant can be sentenced to death does no more than communicate to the jury the degree of certainty upon which their conclusion must be based.

### D.

The constitutional requirement that guilt be proved beyond a reasonable doubt before a person can be convicted of a criminal offense is echoed in section 18–1–402, 8B C.R.S. (1986), part of the Colorado Criminal Code.[11] We have previously interpreted statutes that make the sentence to be imposed dependent upon a fact extraneous to the guilt determination but do not specify the standard of proof by which the fact is to be established. In those cases we have

required such facts to be proved beyond a reasonable doubt. *See People v. Garcia*, 752 P.2d 570, 587 (Colo.1988) (construing the special offender statute, § 18–18–107, 8B C.R.S. (1986)); *People v. Russo*, 713 P.2d 356, 363–64 (Colo.1986) (construing a mandatory sentence statute for crimes of violence, § 16–11–309, 8 C.R.S. (1978)). Moreover, when a statute concerning a criminal offense is silent as to the burden of proof required, "the rule of lenity dictates that we adopt a construction that favors the defendant." *Russo*, 713 P.2d at 364; *accord People v. Lowe*, 660 P.2d 1261, 1267–68 (Colo.1983). In the absence of any specification in section 16–11–103 as to the degree to which a jury must be convinced that any mitigating factors do not outweigh the proven statutory aggravating factors before arriving at a sentence of death, we believe that the statute requiring proof beyond a reasonable doubt in making guilt determinations, and our cases applying that standard to findings of fact in other sentencing contexts, strongly suggest that the same burden must be applied in the weighing process of a death sentencing proceeding.

All of the foregoing considerations and authorities contribute to support the conclusion that Colorado's death penalty statute must be construed to require that the jury must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors before a sentence to death can be imposed.[12] In both *Tenneson* and *Vialpando*, however, the trial court instructed the jurors that in order to sentence the defendant to death they must be convinced beyond a reasonable doubt that the proven statutory aggravating factors outweigh any mitigating factors. This is contrary to the statutory language requiring that the sentencer determine "[w]hether sufficient mitigating factors exist which outweigh any aggravating factor or factors

---

11. § 18–1–402, 8B C.R.S. (1986), states:
   Every person is presumed innocent until proved guilty. No person shall be convicted of any offense unless his guilt thereof is proved beyond a reasonable doubt.

12. In order to minimize the possibility of confusion, we believe it to be the better practice to refer to the beyond a reasonable doubt standard as a burden of persuasion or a burden of convincing the jury rather than a burden of proof.

found to exist." § 16–11–103(2)(a)(II). The trial courts' instructions are disapproved insofar as they require the proven statutory aggravating factors to outweigh any mitigating factors rather than requiring that the jury be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors.

### III.

■ The prosecution also challenges those parts of the jury instructions that required the jurors, during the fourth step of their deliberations, after the weighing of aggravating and mitigating factors had been accomplished, to return a verdict of death only if they unanimously agreed that death was the appropriate punishment beyond a reasonable doubt. For reasons discussed in part II of this opinion, we conclude that these instructions were appropriate. The purpose of these instructions is not to fulfill the traditional function of providing guidance in fact-finding but is to communicate to the jurors the degree of confidence they must have in the correctness of their ultimate conclusion before they can return a verdict of death. We conclude that the standard of "beyond a reasonable doubt" is an implicit part of the statutory scheme.[13]

■ We are reinforced in our conclusion by the fact that under Colorado's statutory scheme the jury would proceed to the fourth step in the unlikely event that the jury were convinced beyond a reasonable doubt that any mitigating factors and the proven statutory aggravating factors were exactly in balance.[14] In those circumstances, it would be especially important that the jurors understand that the fourth step is separate and independent and requires that their ultimate conclusion that death is the appropriate penalty be reached only if they possess the degree of certainty that is communicated by the standard of beyond a reasonable doubt. For this reason, in addition to the general need to assure that the jury understands that step four is separate and distinct from step three, we believe the jury should be specifically instructed that the outcome of the balancing process required in step three does not govern the ultimate determination that the jury must make in step four as to whether the defendant should be sentenced to life imprisonment or to death.[15]

### IV.

■ The prosecution also challenges the courts' instructions to the juries that there is a presumption that life imprisonment is appropriate. Because we hold that the jury must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors, there is in some sense a presumption that the mitigators do outweigh the proven statutory aggravators and therefore a presumption favoring a sentence of life imprisonment. *See* Note, *The Presumption of Life: A Starting Point for a Due Process Analysis of Capital Sentencing*, 94 Yale L.J. 351, 367–71 (1984). To the extent that an instruction embodying a presumption of life imprison-

---

13. The death penalty statute has been amended to eliminate the fourth step of the sentencing procedure. Under the present statute, if a jury finds that "there are insufficient statutory mitigating factors or other mitigating circumstances to outweigh any statutory aggravating factor or factors that were proved and any other aggravating circumstances that were proved, the jury shall return a sentence of death." § 16–11–103(2)(b)(III), 8A C.R.S. (Supp.1989).

14. We express no opinion whether a jury that was convinced beyond a reasonable doubt that mitigating factors and statutory aggravating factors were in equal balance could then conclude *beyond a reasonable doubt* that the death penalty should be imposed.

15. We believe that when the death penalty statute is considered as a whole and is construed as set forth in this opinion, it is adequate to direct and limit the discretion of the sentencer and to permit the sentencing jury to consider relevant mitigating circumstances as constitutionally required. *See generally Zant,* 462 U.S. at 878–80, 103 S.Ct. at 2743–44; *Gregg,* 428 U.S. at 196–207, 96 S.Ct. at 2936–41. Moreover, we conclude that the statutory procedures are adequate to assure that any verdict imposing the death penalty will be constitutionally reliable. *See generally Mills,* 108 S.Ct. at 1870; *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964; *Durre,* 690 P.2d at 172–73.

ment expresses no more than that before a death sentence can be imposed the jury must be convinced beyond a reasonable doubt that the sentence should be imposed, it correctly expresses the law. The instructions given in the cases before us meet this test.

The prosecution takes issue with instruction nos. 11 and 15 in *Tenneson* and instruction no. 3 in *Vialpando*, which contains substantially the same presumption of life imprisonment language as *Tenneson*'s instruction no. 11.[16] The challenged instructions in *Tenneson* provide:

Instruction no. 11:

There is a presumption of life imprisonment in this case. Unless the prosecution proves beyond a reasonable doubt that the sentence should be death instead of life in prison, you must return a verdict of life in prison. This presumption of life imprisonment remains with Mr. Tenneson throughout these proceedings, unless the prosecution proves to your satisfaction beyond a reasonable doubt that Mr. Tenneson should be put to death instead of being sentenced to life in prison.

Instruction no. 15 (in pertinent part):

Any decision by you that the prosecution has proven an alleged statutory aggravating factor beyond a reasonable doubt, must be unanimous and each must be considered separately. The presumption in favor of life imprisonment shall be given effect by you until and unless it is overcome by the prosecution beyond a reasonable doubt.

As we interpret these instructions, no. 11 is simply another way of expressing the standard that guides the fourth step of the jury's sentencing deliberations. At that stage, after the prosecution has established the existence of at least one statutory aggravating factor beyond a reasonable doubt and the jury is convinced beyond a

reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors, the jury still must be convinced beyond a reasonable doubt that the defendant should be sentenced to death. § 16–11–103(2)(a)(III). Read in context, the presumption of life imprisonment language in instruction no. 11 in *Tenneson,* and the substantially similar language in instruction no. 3 in *Vialpando,* express no more than the requirement that the jury must not return a verdict of death unless each juror is convinced beyond a reasonable doubt that the defendant should be sentenced to death. Similarly, in instruction no. 15 in *Tenneson* the presumption of life imprisonment, read in context, is simply an alternative means of expressing the burden of the prosecution to establish any aggravating factor beyond a reasonable doubt.

Although we conclude that the trial courts did not err in referring to a presumption of life imprisonment in the challenged jury instructions, we believe that the better practice is to avoid the use of that term. The statute makes no reference to a presumption of life imprisonment.[17] As employed in *Vialpando* and *Tenneson,* the "presumption" was only another way of expressing the statutory requirements. Our holding that the trial courts acted within their discretion in giving the presumption of life imprisonment instructions, however, is based specifically on the language of those instructions, including the contexts in which the term "presumption of life imprisonment" appears. The use of this term has potential for confusing the jury by introducing an additional and unnecessary concept in an already complex set of instructions. For that reason we believe that the inclusion of the term "presumption of life imprisonment" in jury instructions at the sentencing stage of a death penalty case under the statutory

16. Our review of these instructions is limited to the presumption of life issue and is not intended to signify approval or disapproval of any other feature of the instructions. Instruction no. 17 in *Vialpando* contains language substantially the same as that to which the prosecution objects in *Tenneson*'s instruction no. 15. The prosecution has not argued in this appeal that instruction no. 17 was erroneous.

17. The death penalty statute has been amended substantially. *See* n. 2, above. As amended, it still contains no reference to a presumption of life imprisonment. Our decision in this part IV, however, is based solely on the statute applicable to the Vialpando and Tenneson trials and the instructions given in those cases.

scheme applicable here was ill-advised, although within the trial courts' discretion.

## V.

■ In the *Tenneson* case only, the prosecution challenges an instruction regarding evidence submitted by the defendant in mitigation.[18] The court instructed the jurors that they "must consider as a mitigating circumstance" a list of forty-five statements.

18. The challenged instruction provides:

INSTRUCTION NO. 20

You must consider as a mitigating circumstance that:

1. Michael Tenneson has musical ability and a love of music which can bring happiness to others if he is allowed to live in prison.

2. Michael Tenneson has artistic ability and a love of art which can bring happiness to others if he is allowed to live in prison.

3. Mike expresses his feelings best through his music and art.

4. Mike was severely physically abused by his father as an infant and as a young child.

5. Mike was severely psychologically abused by his father as an infant and as a young child.

6. Mike's father was an alcoholic, a trait that Michael probably inherited genetically.

7. Mike's father was a drunken, brutal, antisocial and sociopathic person.

8. Mike's mother abused and neglected Mike throughout this [sic] childhood. She treated him alternately with raw aggression and erotic stimulation.

9. Every adult who ever took care of Mike as a child was disturbed and eventually each one totally rejected him.

10. Every adult to whom Mike was exposed as a child was sadistically punitive, unreliable, inconsistent, untrustworthy, unstable and inadequate.

11. Mike's aggressive and destructive behavior towards other people is a result of the aggressive and destructive behavior he was constantly subjected to as an infant and a child.

12. Mike's early family life was chaotic and violent, resulting in his parent's divorce and his own feelings of guilt that he was the cause of the divorce.

13. Mike did not kill for the purpose of robbing the victims.

14. Mike has shown regret and remorse for his actions which resulted in the deaths of Mitch Gonzales and Jeff Sheffield.

15. The deaths of Mitch Gonzales and Jeff Sheffield were not inflicted in a cruel or torturous manner, and their deaths occurred with little or no suffering.

16. Mike is a cocaine addict, and that addiction is a consequence of the abuse he suffered during his early childhood.

17. Mike's actions were influenced by his alcoholism and cocaine addiction, which affected his brain chemistry.

18. Mike's actions were influenced by his mental illness.

19. Mike is 28 years old.

20. Michael Tenneson cannot apply to be considered for parole from prison until he is over 108 years of age, if he is allowed to live.

21. Mike's father died suddenly when Michael was six years old, and he has had no stable father figure in his life since then.

22. Mike loves and is loved by his mother despite his childhood, and he can give her solace and support if he is allowed to live in prison.

23. Mike knows he is mentally ill and has sought treatment for that illness.

24. Mike's mental illness results from his chaotic, violent early childhood.

25. Mike was institutionalized several times as a child, and he was first removed from his home at age three because of his mother's criminal conviction.

26. Mike's mom attempted suicide when he was 3 or 4 years old.

27. Mike's mother once left him a note saying she was going to kill herself and his brother Scott and that it was Michael's fault.

28. Mike's kind and helpful relationship with Genevieve Dorrance shows that he has a real capacity for affection and caring.

29. Mike has shown love and affection for family members all of his life, and he could continue to do so if allowed to live in prison.

30. Mike, despite his chaotic family life and other serious problems, obtained a high school diploma.

31. Mike was gang-raped in prison when he was 20 years old.

32. Mike served in the Marines and was honorably discharged.

33. As early as age 7, Michael was "irreparably damaged" as a result of his exposure to the raw aggression and erotic stimulation of the adults around him.

34. Mike, despite the recommendations of the experts who examined him, was not given the recommended treatment as a child.

35. Mike's family considers him to be an important part of the family, and would continue to do so even if he were in prison. His family could not do so if he is put to death.

36. Mike's family does not want him to be killed.

37. Mike is a human being, and as a human being feels those human emotions of love, regret, loneliness, fear, remorse, hopelessness and sorrow.

38. Mike has a beneficial relationship with his brother, Scott.

39. Scott loves Mike and does not want to see him put to death.

40. Mike, through his letters, art, music and visits, will give comfort, guidance and support to his younger brother, if allowed to live.

Both the United States and Colorado constitutions require that a defendant be permitted to submit evidence regarding any aspect of the defendant's character and any circumstances of the offense as a basis for mitigation. *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964; *People v. District Court,* 196 Colo. at 405, 586 P.2d at 34. Evidence of the defendant's troubled childhood, *Eddings v. Oklahoma,* 455 U.S. at 107, 102 S.Ct. at 872, disadvantaged background or emotional and mental problems, *California v. Brown,* 479 U.S. at 545, 107 S.Ct. at 841 (O'Connor, J., concurring), are among the types of evidence admissible as relevant to the sentencing decision. Because this evidence is admissible, the jury instructions should "clearly inform the jury that they are to consider any relevant mitigating evidence about a defendant's background and character, or about the circumstances of the crime." *Id.* at 545, 107 S.Ct. at 841.

An instruction detailing the various grounds of mitigation asserted by the defendant is appropriate as a type of theory of the case instruction. *Cf. People v. Fuller,* 781 P.2d 647, 651 (Colo.1989) (a defendant's theory of the case instruction must be given if the record contains any evidence to support it); *People v. Marquez,* 692 P.2d 1089, 1098 (Colo.1984) (same). The instruction, however, should not assume facts not supported in some manner by the record. *See Clews v. People,* 151 Colo. 219, 227, 377 P.2d 125, 130 (1962); *Barnhisel v. People,* 141 Colo. 243, 246, 347 P.2d 915, 917 (1959).

▮▮▮ We conclude that in *Tenneson* the court erred by instructing the jury that they *must* consider certain statements of purported fact to be mitigating factors.[19] In the penalty phase of a capital trial the jury is charged with determining whether mitigating factors exist. *Cf. Drake,* 748 P.2d at 1256 (only the jury has the authority to determine whether the defendant will be sentenced to death); *Durre,* 690 P.2d at 172 (the jury determines existence and weight of mitigating factors). It is for the jury to decide whether the "facts" that the defendant asserts in mitigation are true and, if so, whether they are to be regarded as mitigating factors. The court, therefore, should instruct the jury as to the defendant's theory of mitigation if the defendant requests such an instruction and if there is any evidence to support it, but should cast the instruction in neutral terms to avoid any implication that the court regards the facts as established or that, if established, they necessarily must be viewed by the jury as mitigating. Accordingly, we disapprove instruction no. 20 given by the court in *Tenneson.*

## VI.

In summary, we hold that the jury must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors and that death is the appropriate penalty beyond a reasonable doubt. The jury should be so instructed. The trial courts erred insofar as they instructed the jury that it must find that the proven statutory aggravating factors outweighed any mitigating factors beyond a reasonable doubt. The trial courts acted within their discretion in giving the challenged instructions concerning a presumption favoring life imprisonment. We further hold that the *Tenneson* trial court erred in instructing the jury that it must consider certain

41. Mike may have a genetic brain defect, inherited from one or both of his parents.
42. Mike will never be able to share the special and intimate relationship with a spouse.
43. Mike will never be able to enjoy the daily moments of living that are so precious and few to those outside of prison, although often taken for granted.
44. When Mike is not under the influence of drugs, he is a kind, compassionate, sensitive, thoughtful human being, who sincerely cares about other people.

45. Barbara Grams still loves and cares about Mike, and does not want to see him put to death.

19. The prosecution also challenges instruction no. 20 in *Tenneson* as being repetitious, containing conclusions of law and containing statements that were unsupported by the evidence. Because we find this instruction flawed in a more fundamental sense, we do not address these challenges specifically.

purported facts as mitigating circumstances.

The trial courts' rulings at issue in *Vialpando* and *Tenneson* are approved in part and disapproved in part.

ERICKSON, J., specially concurs.

ROVIRA, J., concurs in the Opinion of the Court as to Parts I, II, IV and V and in the judgment of the Court as to Part III.

QUINN, C.J., concurs in part and dissents in part.

APPENDIX

The *Vialpando* penalty phase instructions included:

Instruction No. 3 (in pertinent part):

There is a presumption that life imprisonment is the appropriate sentence in this case. Unless the prosecution proves to each of you, to your satisfaction beyond a reasonable doubt, that the sentence should be death instead of life in prison, you must return a verdict of life in prison. This presumption of life imprisonment remains with Mr. Vialpando throughout these proceedings, unless the prosecution proves to your satisfaction beyond a reasonable doubt that Mr. Vialpando should be put to death instead of being sentenced to life in prison.

Instruction No. 16 (in pertinent part):

The third step in your deliberations involves a weighing of the alleged statutory aggravating factor or factors against any and all mitigation.... If one or more jurors finds that the prosecution has not proven beyond a reasonable doubt that the alleged statutory aggravating factor or factors outweigh any and all mitigating factors, then the result is a sentence of life imprisonment.

Instruction No. 18 (in pertinent part):

In order to return a verdict of death, you must be convinced that the alleged statutory aggravating factor or factors found to exist beyond a reasonable doubt do outweigh any mitigating factors beyond a reasonable doubt and also that the death penalty is the appropriate penalty beyond a reasonable doubt.

Instruction No. 22 (in pertinent part):

In the third step of your deliberations you must determine whether beyond a reasonable doubt, alleged statutory aggravating factors outweight [sic] any and all mitigating factors....

Your deliberations during this step of the proceeding can lead to one of three results.

....

2. If all jurors unanimously agree that there are no mitigating factors or that the statutory aggravating factor or factors found to exist outweigh the mitigating factors beyond a reasonable doubt, then the jury shall determine if death is the appropriate punishment in this case.

3. If one or more jurors believe the prosecution has not proven that the statutory aggravating factors found to exist outweigh the mitigation beyond a reasonable doubt, then you shall sign the appropriate verdict indicating your inability to agree.

Instruction No. 31 (in pertinent part):

If you unanimously decide that the statutory aggravating factor or factors outweigh any mitigating factor or factors, you must now proceed to the fourth step, in which you may consider whether to impose a death sentence on Mr. Timothy Vialpando in this case.

Before imposing a death sentence, however, you must also unanimously be convinced beyond a reasonable doubt that death is the appropriate punishment for Timothy Vialpando in this case.

Each of you must make your own individual assessment of whether Mr. Timothy Vialpando shall be sentenced to death or to life in prison. If you are not convinced beyond a reasonable doubt, that death is the appropriate punishment in this case, you must return a verdict of life imprisonment....

If you cannot unanimously decide that death is the appropriate verdict beyond a reasonable doubt, then you should return the appropriate verdict form indicating

you are unable to reach a verdict and the sentence will be life imprisonment.

Instruction No. 38 (in pertinent part):

If you do not find that the People have proven beyond a reasonable doubt at least one of the aggravating factors, you shall return a verdict of life imprisonment.... If you find beyond a reasonable doubt that death is the appropriate punishment, you should return a verdict of death.

The *Tenneson* penalty phase instructions included:

Instruction No. 11:

There is a presumption of life imprisonment in this case. Unless the prosecution proves beyond a reasonable doubt that the sentence should be death instead of life in prison, you must return a verdict of life in prison. This presumption of life imprisonment remains with Mr. Tenneson throughout these proceedings, unless the prosecution proves to your satisfaction beyond a reasonable doubt that Mr. Tenneson should be put to death instead of being sentenced to life in prison.

Instruction No. 13 (in pertinent part):

The third step in your deliberations involves a weighing of the alleged statutory aggravating factor or factors against any and all mitigation.... If one or more jurors finds that the prosecution has not proven beyond a reasonable doubt that the alleged statutory aggravating factor or factors outweigh any and all mitigating factors, then the result is a sentence of life imprisonment....

The fourth step in your deliberations is to decide whether the defendant should be sentenced to death or life imprisonment. This decision is solely in your discretion. If one or more jurors finds that life imprisonment is the appropriate penalty, then the result must be a sentence of life imprisonment. Unless you unanimously agree beyond a reasonable doubt that the death penalty is the appro-priate punishment, you must return a verdict of life in prison.

Instruction No. 14 (in pertinent part):

In order to return a verdict of death, you must be convinced that the alleged statutory aggravating factor or factors found to exist beyond a reasonable doubt do outweigh any mitigating factors beyond a reasonable doubt and also that the death penalty is the appropriate penalty beyond a reasonable doubt.

Instruction No. 23 (in pertinent part):

In the third step of your deliberations you must determine whether, beyond a reasonable doubt, alleged statutory aggravating factors, unanimously found, outweigh any and all mitigating factors. The prosecution must prove beyond a reasonable doubt that statutory aggravating factors outweigh the mitigating factors....

Your deliberations during this step of the proceeding can lead to one of three results.

....

2. If all jurors unanimously agree that there are no mitigating factors or that the statutory aggravating factor or factors found to exist outweigh the mitigating factors beyond a reasonable doubt, then the jury shall determine if death is the appropriate punishment in this case.

3. If one or more jurors believe the prosecution has not proven that the statutory aggravating factors found to exist outweigh the mitigation beyond a reasonable doubt, then you shall sign the appropriate verdict indicating your inability to agree.

Instruction No. 26 (in pertinent part):

If you unanimously decide that the statutory aggravating factor or factors outweigh any mitigating factor or factors, you may consider whether to impose a death sentence on Mr. Tenneson in this case.

Before imposing a death sentence, however, you must also unanimously be convinced beyond any reasonable doubt that death is the appropriate punishment for Michael Tenneson in this case.

Each of you must make your own individual assessment of whether Mr. Tenneson shall be sentenced to death or to life in prison. If you are not convinced beyond a reasonable doubt that death is the appropriate punishment in this case, you must return a verdict of life imprisonment. . . .

If you cannot unanimously decide that death is the appropriate verdict beyond a reasonable doubt, then you should return the appropriate verdict form indicating you are unable to reach a verdict and the sentence will be life imprisonment.

Justice ERICKSON specially concurring:

No formula exists for the enactment of a perfect death penalty statute. Commencing with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the United States Supreme Court has imposed numerous constitutional barriers to the imposition of the death penalty. It is not our function to redraft or interpret the statute in issue to provide an answer · to every constitutional claim that might be made in some future case.

This appeal is taken pursuant to section 16–12–102(1), 8A C.R.S. (1986), which, at the time of this appeal, granted a prosecutor the right to appeal any decision of the trial court in a criminal case to the supreme court upon any question of law. In this case two appeals by the prosecution are before us. In both cases, the defendants were sentenced to life imprisonment and the death penalty could not now be imposed in either case. Here, the district attorney asserts that the instructions that were given in both cases were erroneous.

Section 16–11–103, 8A C.R.S. (1986), governed the sentencing phase of a trial for a capital case when both cases were tried. The statute was amended in 1988 and for that reason this opinion is of limited value in providing guidance for the trial of future cases. *See* maj. op. at 789 n. 2. In my view, the language contained in part III of the majority opinion in this case may be significant to the General Assembly because the majority opinion suggests that the 1988 amendment is not constitutionally sound. Maj. op. at 796.

In part III of the opinion, the majority addresses the safeguard provided by the fourth step in the statutory sentencing procedure in section 16–11–103. This step has been eliminated by the 1988 amendment. The dissent by the Chief Justice addresses the issue of equipoise and the duty imposed on the jury and the court in addressing the unlikely event that the aggravating and mitigating factors are in equal balance. The equal balance argument, in my opinion, based on the instructions and verdict forms, is not before us in this case and is a hypothetical issue which should not be addressed. The hypothetical set of circumstances which might, in some case, at some time in the future under some other death penalty statute, provide the equal balance that is addressed by both the majority and the dissent should not cause us to go beyond the plain wording of the death penalty statute. In addition, the majority has assumed that the General Assembly imposed the burden of proof beyond a reasonable doubt on the prosecution in establishing that the mitigating factors do not outweigh the proven statutory aggravating factors. Maj. op. at 795–796. Although we should not apply a "wooden rendition" to the statutes enacted by the General Assembly, we should not interpret the words of the statute to include principles that extend beyond the plain and ordinary interpretation of the words contained in the statute.

Accordingly, I specially concur with the majority opinion.

Chief Justice QUINN concurring in part and dissenting in part:

I concur in all but one aspect of Part II of the court's opinion, to which I dissent. In Part II the court holds that the "beyond a reasonable doubt standard" applies to that phase of a capital sentencing hearing in which the jury is required to weigh mitigating factors against any proven aggravating factors, and with that holding I agree. The court, however, proceeds to formulate the reasonable doubt standard

applicable to this weighing process in terms of whether the jury is convinced that "any mitigating factors do not outweigh the proven statutory aggravating factors before a sentence of death can be imposed." Maj. op. at 792–793, 795–796. I disagree with and dissent from the majority's formulation in terms of mitigation not outweighing aggravation for two reasons: first, the majority's formulation contravenes the basic requirement of reliability mandated by the Cruel and Unusual Punishment Clauses of the United States and Colorado Constitutions, U.S. Const. amend. VIII; Colo. Const. art. II, § 20; and second, the majority's formulation creates a burden-shifting presumption of death upon the prosecution's proof of an aggravating factor in violation of both the Cruel and Unusual Punishment and Due Process Clauses of the United States and Colorado Constitutions, U.S. Const. amends. VIII and XIV; Colo. Const. art. II, §§ 20 & 25.

### I.

Section 16–11–103(1)(d), 8A C.R.S. (1986), provides that the burden of proof as to any aggravating factor shall be beyond a reasonable doubt but that "[t]here shall be no burden of proof as to proving or disproving mitigating factors"; and section 16–11–103(2)(a)(II), 8A C.R.S. (1986), states that the jury in rendering a capital sentencing verdict shall consider "[w]hether sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist." Section 16–11–103(2)(a)(III), 8A C.R.S. (1986), requires the jury, based on its determinations regarding whether the prosecution has proven beyond a reasonable doubt the existence of an aggravating factor and whether sufficient mitigating factors exist which outweigh any aggravating factor or factors, to then decide whether the defendant shall be sentenced to death or life imprisonment. Any interpretation of the statutory terminology applicable to the weighing process must be guided not by a wooden rendition of the statutory text but by the overriding constitutional principles of capital punishment jurisprudence. *See* § 2–4–201, 1B C.R.S. (1980) (in enacting statute, legislature presumed to

intend compliance with United States and Colorado Constitutions).

The majority recognizes the following two requirements necessary for compliance with the constitutional prohibition against cruel and unusual punishment: first, the capital sentencing procedures must effectively guide and channel the jury's discretion by narrowing the class of persons eligible for a death sentence and must provide justification for the imposition of a more severe sentence on a particular defendant in comparison to others found guilty of murder, *e.g., Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and second, the capital sentencing procedures must allow the sentencing body to consider any relevant mitigating evidence regarding the defendant's character and background and circumstances of the offense, *e.g., Penry v. Lynaugh,* — U.S. —, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1985); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). These two requirements find their source in the even more basic requirement of reliability—a requirement that is constitutionally mandated for a capital sentencing hearing. The reliability requirement for a capital sentencing proceeding mandates that any capital sentencing scheme be grounded in a higher degree of reliability than that applicable to a guilty verdict and that the capital sentencing procedures be so designed as to ensure that each juror be convinced to a correspondingly high degree of certainty that death rather than life imprisonment is the appropriate penalty.

*Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), illustrates the close scrutiny with which the United States Supreme Court has applied the reliability requirement to a state capital sentencing scheme. In that case the United States Supreme Court vacated a Maryland death sentence because the jury instructions and verdict forms well might

have led the jurors reasonably to believe that they were precluded from considering any mitigating evidence unless all twelve jurors agreed on the existence of a particular mitigating circumstance.[1] After noting the high degree of certainty necessary for a capital sentencing verdict, the Court stated:

> The decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. The possibility that [the defendant's] jury conducted its task improperly certainly is great enough to require resentencing.

108 S.Ct. at 1870; *see also Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (the need for reliability in capital sentencing required reversal of death sentence where possibility existed that sentencing body relied on a presentence investigative report containing information which defendant had no opportunity to explain or deny).[2]

The elevated standard of reliability applicable to a capital sentencing proceeding is nothing less than constitutional acknowledgement that there is a qualitative difference between death and other forms of punishment and that this qualitative difference necessitates a "corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Zant,* 462 U.S. at 884–85, 103 S.Ct. at 2746–47; *see also Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (death sentence vacated where jury led to believe that responsibility for determining ultimate appropriateness of sentence rested elsewhere); *Lockett,* 438 U.S. at 586, 98 S.Ct. at 2955 (Ohio statute which precluded consideration of defendant's character and other relevant circumstances applicable to punishment held unconstitutional as undermining greater degree of reliability necessary for capital sentencing proceeding).[3] It

---

1. In *Mills,* the Supreme Court formulated the question before it as whether a reasonable juror *could have* interpreted the instructions and verdict forms as requiring unanimous jury agreement on a particular mitigating circumstance. 108 S.Ct. at 1866. The Court went on to conclude that there was a *substantial probability* that reasonable jurors "well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." 108 S.Ct. at 1870. In *Boyde v. California,* — U.S. ——, 110 S.Ct. 1190, — L.Ed.2d — (1990), the Court considered whether a jury instruction that included as a mitigating factor "[a]ny other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime" was capable of being interpreted by the jurors as precluding them from considering non-crime related factors, such as the defendant's background and character. The Court stated that the proper inquiry in resolving that issue is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Id.,* — U.S. at ——, 110 S.Ct. at 1198. The Court concluded that the instruction was not so ambiguous as to create a "reasonable likelihood" of being interpreted by the jury as prohibiting the consideration of mitigating evidence of the defendant's background and character.

2. The United States Supreme Court in *McKoy v. North Carolina,* — U.S. ——, 110 S.Ct. 1227, — L.Ed.2d — (1990), ruled unconstitutional North Carolina's death penalty scheme which provided for the jury to sentence a defendant to death after finding *unanimously* that there was one or more aggravating circumstances, that there was one or more mitigating circumstances, that the proven mitigating circumstances were insufficient to outweigh the proven aggravating circumstances, and that the proven aggravating circumstances were sufficiently substantial to call for the death penalty when considered with the proven mitigating circumstances. Relying on *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the Court concluded that the unanimity requirement for the finding of mitigating circumstances impermissibly limited the jurors' consideration of mitigating evidence and, thus, was "[i]n contrast to the carefully defined standards that must narrow a sentencer's discretion to impose the death sentence ..." *Id.* (quoting *McCleskey v. Kemp,* 481 U.S. 279, 304, 107 S.Ct. 1756, 1773, 95 L.Ed.2d 262 (1987)).

3. In *Blystone v. Pennsylvania,* — U.S. ——, 110 S.Ct. 1078, — L.Ed.2d — (1990), the United States Supreme Court upheld a Pennsylvania capital sentencing scheme that required a death sentence if the jury unanimously found at least one aggravating circumstance and no mitigating circumstances, or found one or more aggravat-

matters not whether a particular infirmity in this constitutional requirement of reliability originates in a statute, a jury instruction, an evidentiary ruling, or, as here, in an appellate interpretation of a statutory procedure. *See Mills*, 108 S.Ct. at 1866.

We have adhered to this same requirement of reliability in our own decisions. *E.g., People v. Drake*, 748 P.2d 1237 (Colo. 1988) (death sentence reversed where jury instructions did not clearly and unambiguously apprise jury of their role "as the sole arbiter of whether a sentence of death should be imposed upon the defendant"); *People v. Durre*, 690 P.2d 165 (Colo.1984) (death sentence reversed where jury verdicts manifested some uncertainty as to whether all jurors had unanimously agreed to death sentence and where instructions on aggravating and mitigating circumstances did not adequately inform jury of effect of verdicts on ultimate question of life imprisonment or death).

Under decisions of the United States Supreme Court and this court, therefore, it is not enough that a capital sentencing scheme narrows the class of convicted capital-offense offenders eligible for the death penalty and allows the jury to consider any relevant mitigating circumstances on the issue of punishment. What is also required is that a capital sentencing scheme be constitutionally reliable. It is this constitutional requirement of reliability, which necessarily includes the need for a high degree of certainty on the part of each juror that death is the appropriate penalty, against which Colorado's capital sentencing scheme must be measured.

## II.

The majority's formulation of the "proof beyond a reasonable doubt" standard in terms of mitigating factors not outweigh-

ing any proven aggravating factors, when analyzed on the basis of the bare essentials of the formulation, vitiates the reliability essential to a constitutionally valid capital sentencing proceeding. What the majority's formulation means is that a defendant remains eligible for a death sentence as long as the jury is not convinced beyond a reasonable doubt that the defendant has produced sufficient evidence to persuade the jury that mitigating factors outweigh the prosecution's proof of aggravating factors. The majority's formulation, in other words, permits the jury to consider the imposition of a death sentence notwithstanding the fact that the jury is satisfied that mitigating factors are evenly balanced with any proven aggravating factors. Such a formulation, in my view, is irreconcilable with the heightened reliability and concomitant certainty required for a constitutionally valid death verdict.

What is at issue in a capital sentencing proceeding is far more than a fundamental constitutional right. What is at stake is the accused's transcending interest in life itself, without which there are no rights at all. If the federal Due Process Clause prohibits a state from adjudicating a child as a delinquent under a "preponderance of the evidence" standard, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and if Colorado's Due Process Clause prohibits the state from requiring a defendant to prove his insanity by a preponderance of the evidence as a defense to a criminal charge, *People v. Dist. Court*, 165 Colo. 253, 439 P.2d 741 (1968), surely the federal and state constitutional prohibitions against cruel and unusual punishment must not be applied in a manner that permits the state to execute an accused when the mitigating factors are evenly balanced with the proven aggravating factors. In that instance the jury would not be con-

---

ing circumstances that outweighed any mitigating circumstances. The Court concluded that the Pennsylvania statute satisfied the Eighth Amendment requirement of individualized sentencing by requiring the jury to consider all mitigating circumstances and thus did not unduly limit the types of mitigating evidence available for the jury's consideration. *Id.* at ——, 110 S.Ct. at 1080. The Court also concluded

that the Pennsylvania statutory scheme did not create a constitutionally impermissible mandatory death penalty, since death would be imposed "only after a determination that the aggravating circumstances outweigh the mitigating circumstances present in the particular crime committed by the particular defendant, or that there are no such mitigating circumstances." *Id.* at ——, 110 S.Ct. at 1081.

vinced to any degree of acceptable certainty that the proven aggravating factors upon which a death sentence may be based actually outweigh the mitigating factors.

The observations of the New Jersey Supreme Court in considering a statutory scheme similar to the one before us are particularly pertinent here:

> We speak here about the ultimate value judgment, the ultimate question of life or death, for while the formulation is in terms of "beyond a reasonable doubt," and therefore appropriately applicable to factfinding, the weighing really is not factfinding at all but a judgmental determination by the jury, based on conflicting values, of whether the defendant should live or die. *See Barkely v. Florida,* 463 U.S. 939, 950, 103 S.Ct. 3418, 3425, 77 L.Ed.2d 1134, 1144 (1983) (plurality opinion) ("It is entirely for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing."). If anywhere in the criminal law a defendant is entitled to the benefit of a doubt, it is here. We therefore hold that as a matter of fundamental fairness the jury must find that aggravating factors outweigh mitigating factors, and this balance must be found beyond a reasonable doubt.

*State v. Biegenwald,* 106 N.J. 13, 524 A.2d 130, 156 (1987). This same reasoning should also apply to a situation where the mitigating factors are close to but necessarily equal to the aggravating factors, since a death sentence imposed under such circumstances lacks the reliability and requisite certainty constitutionally required for a capital sentencing proceeding. I would require as a matter of state constitutional law under the Cruel and Unusual Punishment Clause of the Colorado Constitution, and independently of whether such requirement is ultimately incorporated into federal constitutional law, that the prosecution bear the burden of persuading the jury beyond a reasonable doubt that any proven statutory aggravating factors outweigh any mitigating factors.

I cannot accept the majority's conclusion that the additional requirement of unanimous jury agreement beyond a reasonable doubt that death is the appropriate penalty cures the constitutional infirmity in permitting the jury to return a death verdict as long as the jury is convinced that mitigating factors do not outweigh aggravating factors. The last stage of the deliberative process is without guidance and, practically speaking, will be dependent upon the jury's preceding determination that mitigating factors do not outweigh aggravating factors. *See* § 16–11–103(2)(a)(III), 8A C.R.S. (1986) (jury verdict on life imprisonment or death to be based on its determinations regarding existence of aggravating factor and whether sufficient mitigating factors exist which outweigh aggravating factor or factors). It is that weighing process which, in view of the majority's formulation of the "beyond a reasonable doubt" standard, enhances the "risk [that] the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Lockett,* 438 U.S. at 605, 98 S.Ct. at 2965.[4]

### III.

The practical effect of the majority's formulation of the "proof beyond a reasonable doubt" standard is to create a burden-shifting presumption of death eligibility upon the state's proof of an aggravating factor beyond a reasonable doubt. Rules relating to the burden of persuasion serve the function of directing jurors on how to decide an issue if their minds are in doubt. *See* C. McCormick, *Evidence* § 337 at 784 (E.

---

**4.** In *McKoy v. North Carolina,* — U.S. —, 110 S.Ct. 1227, — L.Ed.2d — (1990), the United States Supreme Court considered the interrelationship between two findings the jury was required to make in determining whether to sentence the defendant to death. One finding required the jury to determine unanimously whether a particular mitigating factor existed, and the other finding required the jury to determine unanimously whether the proven aggravating factors were sufficiently substantial, when considered with the proven mitigating factors, to call for the death penalty. The Court concluded that the latter finding did "not ameliorate the constitutional infirmity created by the unanimity requirement" regarding the finding of mitigating factors.

Cleary ed. 1972). Presumptions which have the effect of shifting the burden of persuasion to an accused have been struck down as violative of due process of law under both the United States and Colorado Constitutions. *See, e.g., Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (where defendant charged with "malice murder," jury instructions stating that acts of person of sound mind and discretion are presumed to be product of person's will, and that person of sound mind is presumed to intend natural and probable consequences of acts, created burden-shifting presumption in violation of due process); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (where defendant charged with "deliberate homicide," jury instruction stating that law presumes that a person intends ordinary consequences of voluntary acts was either a conclusive or burden-shifting presumption in violation of due process); *Jolly v. People,* 742 P.2d 891 (Colo.1987) (in prosecution for driving while license revoked, jury instruction stating that defendant's knowledge of revocation is established by evidence of mailing revocation notice to defendant's address as recorded on records of Department of Revenue created either conclusive or burden-shifting presumption in violation of due process).

Although the aforementioned decisions struck down burden-shifting presumptions in the context of the guilt phase of a criminal prosecution, the reliability essential to a constitutionally valid capital sentencing proceeding mandates that the state, which after all is seeking the death penalty, bear the burden of persuasion throughout all phases of the capital sentencing proceeding. Under the majority's formulation, unless the defendant produces evidence of mitigation *sufficient to outweigh* the state's proven aggravating factors, the jury is permitted to return a death verdict irrespective of the quantity and quality of mitigating evidence offered by the defendant. I cannot square such a rule with either the constitutional prohibition against cruel and unusual punishment, at least as a matter of state constitutional doctrine, or

with the most rudimentary requirements of due process of law. *See Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988) (Arizona statutory scheme requiring imposition of death sentence when one or more aggravating circumstances exist and "there are no mitigating circumstances sufficiently substantial to call for leniency" violates Eighth Amendment by creating a presumption of death and unduly limiting consideration of mitigating factors); *Jackson v. Dugger,* 837 F.2d 1469 (11th Cir.1988) (finding unconstitutional a jury instruction stating that death should be presumed as the appropriate penalty unless mitigating circumstances outweigh proven aggravating circumstances), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988).

The fact that the jury, after determining that mitigating factors do not outweigh any proven aggravating factor, is then required to decide whether death is the appropriate penalty does not rectify the burden-shifting effect of the court's formulation of the "beyond a reasonable doubt" standard. If anything, the jury's determination that mitigating factors *do not outweigh* any proven aggravating factors predisposes the jury, under instructions and verdict forms duplicating the statutory terminology, to sentence the defendant to death. *See* § 16–11–103(2)(a)(III), 8A C.R.S. (1986). Such predisposition originates directly from a formulation of the "beyond a reasonable doubt" standard that permits the jury to consider the imposition of a death sentence upon the prosecution's proof of one or more aggravating factors notwithstanding the fact that the jury is not convinced to a moral certainty that the proven aggravating factors actually outweigh the mitigating evidence offered by the defendant.

## IV.

I would construe section 16–11–103(2)(a)(II) to require that before a death sentence may be imposed the prosecution must establish to a moral certainty that any proven aggravating factors outweigh any mitigating factors established by the evidence. Such construction, in my view, is necessary to conform Colorado's capital sentencing scheme to the reliability re-

quirement mandated, if not by the Eighth and Fourteenth Amendments to the United States Constitution, at least by the Cruel and Unusual Punishment and Due Process Clauses of the Colorado Constitution. I would therefore impose such requirement as a matter of state constitutional law regardless of what direction the uncertain state of federal law ultimately may take. Since the majority adopts a different construction of section 16–11–103(2)(a)(II) in Part II of its opinion, I dissent from that construction. With all other parts of the court's opinion I concur.